392 A.2d 817

**COMMONWEALTH of Pennsylvania ex rel. Judy Deemer STRUNK**

v.

**Ronald CUMMINS and Sandra Cummins, his wife, Appellees.**

**Appeal of Judy Deemer STRUNK.**

Superior Court of Pennsylvania.

Argued March 27, 1978.

Decided Oct. 20, 1978.

Vickie Ann Gillio, Easton, for appellant.

Carl F. Skinner, Easton, submitted a brief for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

This is an appeal from the order of Judge Richard D. Grifo of the Northampton County Court awarding custody of infant Terry Deemer, Jr. to Ronald and Sandra Cummins, the child's uncle and aunt, rather than to the child's natural

mother, Judy Deemer Strunk. Mrs. Strunk now appeals from the lower court's decision. Having given this matter careful consideration, we reverse the lower court and order that Mrs. Strunk be given custody of her son.

Terry Deemer, Jr. is Judy Strunk's son by her marriage to Terry Deemer, Sr. The child was born on January 15, 1973. Approximately eight months after the infant's birth, Terry Deemer, Sr. left his wife, who was then 17 years old, and their infant son in a one-room apartment without financial support. Because her husband had not paid the gas bill, appellant and her son did not even have benefit of hot water. Appellant managed for several months, first by living with the family of her girlfriend, then with her own family, and finally by herself. This last place consisted of only one room and lacked cooking facilities. In this difficult situation, Judy managed as well as she was able, taking her son to restaurants to feed him. Appellant took Terry, Jr. to a medical clinic regularly in attending to the child's medical needs.

Appellant recognized that she herself was suffering from the strain when she became very "nervous." Still, her main concern was her child and her care of him. Appellant was seriously considering putting her child in a foster home when her aunt and uncle, the Cumminses, offered to take the boy. However, the Cumminses said that they would only take Terry, Jr. if they could adopt him. At this time, Terry was one and a half years old and appellant, not knowing what else to do, agreed.

Soon after placing her son in the Cumminses' home, appellant asked to visit Terry, Jr. and the Cumminses refused this request and all others. After six months elapsed, appellant spoke with the Cumminses' lawyer, who agreed that appellant should be allowed to see her son. Thereafter, appellant regularly visited Terry, Jr., though the Cumminses limited each visit to two hours.

Appellant claims that she talked to the Cumminses sometime around July of 1975 and asked them to give back her son. The Cumminses deny every having such a discussion.

In any event, Judy Deemer married S. Michael Strunk on August 9, 1975. On September 17, 1975 a habeas corpus petition was filed by appellant to regain custody of Terry, Jr.

A hearing was held on this matter on December 15, 1975. Upon its conclusion, the lower court ordered that the infant should be examined by a child psychologist who was to report to the court regarding the probability and severity of separation trauma if custody were to be changed. In the discussion accompanying this examination order, the lower court noted, "[W]hile [the Cumminses] have shown themselves to be an exemplary family and which, without fail, could provide for Terry, Jr.'s best interests, there is little in the record to suggest that [appellant] would be an inadequate parent."

In accordance with the court's order, Terry, Jr. was examined by a child psychiatrist, Dr. Haydn B. Collins. Dr. Collins issued his report on June 14, 1976 in which he made the following recommendations.

"*Recommendations*: (1) No therapy appears indicated in this child. (2) I could not see anything in today's work-up to suggest a need for change in this child. i. e.: This child has apparently prospered in the past two years—in a single setting—and he presently finds himself secure enough to take on the adult male in the one to one situation. I had to feel that this boy represented a firm picture today—one which reflected security, predictability. Regardless of the court decision, I would hope that these features could be maintained—and I would have to feel that a great deal of consistency would have to be involved in this situation. As noted, I found nothing in today's session which would indicate that this child has done anything but prosper in his present family set up."

Dr. Collins also testified in court, essentially reiterating his written report.

The lower court interpreted Dr. Collins' report to mean that Terry should remain with the Cumminses. In its order dated August 4, 1976, the lower court said that the two

years which Terry Deemer, Jr. spent with the Cumminses represents a substantial portion of the child's life, as measured by the child's age. For legal authority, the lower court relied on *Commonwealth ex rel. Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976) wherein the court overruled an order of the lower court changing the custody of a seven year old boy from his mother to his father. In part, the *Gunter* court based its decision on its concern over disrupting the child's environment.

The scope of review for this Court when asked to examine a decision regarding custody of a child has been set forth in previous decisions. We have the power to make an independent judgment, broadly examining the evidence, though we will not nullify the fact-finding function of the hearing judge when his conclusions are supported by competent evidence. *Spells v. Spells,* 250 Pa.Super. 168, 378 A.2d 879 (1977); *Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372 (1977); *In re Sharpe,* 248 Pa.Super. 74, 374 A.2d 1323 (1977). At all times, our paramount consideration is the best interest and welfare of the child. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Commonwealth ex rel. Ruczynski v. Powers,* 421 Pa. 2, 219 A.2d 460 (1966); *Tomlinson v. Tomlinson,* supra; *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977); *Commonwealth ex rel. Steuer v. Steuer,* 244 Pa.Super. 302, 368 A.2d 732 (1976). Having defined our role, we turn to the facts in the instant case.

The record indicates that when appellant turned her son over to the Cumminses, she did this in the interest of her child. Since that time, appellant's living situation has improved. She has now remarried and her new husband testified that he would treat Terry as if the child were his own. As of the most recent hearing, on February 18, 1976, appellant's husband was employed at North Western Paper Mill, earning about $110.00 per week. Appellant and Michael Strunk have now been married for approximately three years. When appellant appeared in court on Decem-

ber 15, 1975, she told the court that she was then expecting a child from her marriage to Michael Strunk and that she was prepared to be a mother to both Terry and her second child. At the trial, appellant indicated that she already had a room waiting for Terry. Furthermore, when she was asked if she thought she would ever give up custody of Terry again, appellant testified,

"No, never again. I've really learned through this experience that I would never do it again. I couldn't because I love him and I have suffered. I just—I really suffered."

It is important to remember that this custody dispute is between the child's natural mother and non-parental relatives. In this situation, "the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side." *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648, 654 (1977). See also, *Ramos v. Rios,* 249 Pa.Super. 487, 378 A.2d 400 (1977).

As indicated above, the lower court did not find appellant to be an unfit parent. The court instead based its entire decision upon its belief that a change in custody would result in a separation trauma in young Terry. The lower court's concern is certainly commendable. However, the court's conclusion is not supported by the record.

In his report, Dr. Collins did not advise against a change in custody. His exact words were, "I could not see anything in today's work-up to suggest a need for change in this child. . . . Regardless of the court decision, I would hope that these features could be maintained. . . ." Dr. Collins' report does not say that young Terry will undergo a dramatic separation trauma, only that Terry is doing well. Dr. Collins' report describes Terry as a secure young boy. A change in custody will require some adjustment on Terry's part but not the dramatic separation trauma that the lower court feared. As the *Hernandez* court said, the parents of a child have a prima facie right to custody, forfeited only

where convincing reasons show that it would be in the best interest of the child. 376 A.2d at 654. Therefore, we reverse and order that appellant be given custody of her son.

Order reversed and custody of Terry Deemer, Jr. is directed to be given to Judy Deemer Strunk.

HOFFMAN, J., did not participate in the consideration or decision of this case.