493 A.2d 116

**Brendon L. BEERS**

v.

**John L. BEERS, Appellant.**

Superior Court of Pennsylvania.

Argued March 13, 1985.

Filed May 17, 1985.

466

Bradley K. Hellein, Kittanning, for appellant.

Alberta R. Beardsley, Kittanning, for appellee.

Before DEL SOLE, HESTER and FEENEY, JJ.*

HESTER, Judge:

In this appeal, appellant seeks our review of an Order of Court awarding custody of his daughter to appellee, the child's mother. Appellant received liberal visitation rights, however, as in many of these cases, the non-custodial parent wants that degree of participation in his child's life which only primary custody affords.

The parties to this action were married on April 9, 1977, and resided in Armstrong County. The minor subject of these proceedings, Jennifer, was born on March 29, 1979. In June of 1982, the parties separated; the mother moved to Jamestown, New York, and the father moved to Indiana, Pennsylvania. The mother immediately assumed primary custody of the child. An agreement by the parties in September of that year formalized the arrangement, which continued until March 3, 1983. On that date, the parties agreed to share custody of Jennifer, with the parties alternating custody every two weeks.

* Judge John M. Feeney, of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

In March of 1984, appellee filed a complaint seeking principal custody of the child in view of her impending attendance at kindergarden. Appellant filed a cross-complaint, and a hearing was held on the matter in June of 1984. After reviewing the evidence and weighing the testimony adduced at trial, the lower court awarded primary custody of Jennifer to appellee during the academic year, and custody to appellant during the summer months, with liberal visitation to the noncustodial parent. Appellant thereafter perfected this appeal.

The fundamental issue presented by this appeal is whether the lower court erred in awarding primary physical custody to appellee. In reviewing custody orders,

> an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with these conclusions *unless they are unreasonable in light of the trial court's factual findings* [,] ... and, thus, represent a gross abuse of discretion....

*Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 237, 478 A.2d 800, 806 (1984) (citation omitted; emphasis in original). In that opinion, the Supreme Court clearly placed the burden of proving that the trial court's decree was manifestly erroneous or that it constituted a gross abuse of discretion upon appellant. *Id.* If the party challenging the order of court fails to meet his or her burden, then we have no choice but to affirm the decision of the trial judge. In doing so, we defer to his unique ability to observe the demeanor of the parties and evaluate the testimony of the witnesses.

In order to support his burden, appellant alleges that the lower court erred in finding that (1) the child's educational needs would be adequately served if placed with either parent; (2) the mother had been the primary caregiver prior to the shared custody agreement; (3) the mother would have more time to spend with the child; and (4) in failing to find that appellant's home was more stable and secure than appellee's home. For the foregoing reasons, appellant ar-

gues the court's award of custody did not serve the best interests of the child.

The polestar of any child custody dispute is to reach a decision which serves the "best interests" of the child. *Gonzalez v. Gonzalez,* 337 Pa.Super. 1, 5, 486 A.2d 449, 451 (1984); *Brooks v. Brooks,* 319 Pa.Super. 268, 466 A.2d 152 (1983). Factors to be considered in arriving at such a determination include the child's physical, intellectual, emotional, and spiritual well-being. *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Super. 239, 447 A.2d 630 (1982). Thus, we must analyze the lower court's factual findings to ascertain whether his conclusion that the child's best interests are met by placement with the mother finds support in the record.

In appellant's first argument, he expressed his concern for Jennifer's educational needs and contends that appellee has failed to make the educational needs of the child a priority. To support this argument, appellant asserts that appellee had not finalized Jennifer's enrollment at kindergarden or her after-school care at the time of the first hearing on June 5, 1984. Appellant, on the other hand, testified as to exactly where the child would attend kindergarden, her transportation to and from school, and her subsequent care. Moreover, he avers that no testimony was presented as to the adequacy of the school ultimately chosen by appellee. Therefore, he concludes that the trial court erred in finding that Jennifer's needs would be adequately met regardless of her placement.

First, we note that the record reveals nothing about the educational programs advanced by either party. As to appellee's initial hesitancy about Jennifer's schooling arrangements, appellee explained at the hearing that she had moved four days earlier, causing some reconsideration of her original plans for Jennifer. By the date of the second hearing, appellee had completed the arrangements for Jennifer's schooling. We refuse to attribute any lack of concern or interest by appellee in her daughter's educational

needs merely because her change of domicile caused some temporary disruption of plans.

We do discern from the tone of appellant's testimony and his brief a feeling of academic superiority over his ex-wife. During the marriage, appellant was a full-time student pursuing his undergraduate degree, while appellee was a full-time homemaker and child rearer. In fact, appellee worked part-time to supplement the family's income during this period.

Appellant is currently a computer programer at the Indiana University of Pennsylvania and is pursuing a degree in Business Administration Management for Systems. Appellee is employed as a saleswomen and manager trainee for a clothing store. Although circumstances may have enabled appellant to achieve his academic goals sooner, appellee is currently enrolled at and attending Jamestown Community College.

■ We believe that both parents evince an awareness of the importance of education and would be equally responsive to Jennifer's training. We find no error in the court's conclusion that the child's educational needs would be appropriately addressed in either custodial arrangement. Such a conclusion rests upon an adequate foundation in the record.

Appellant next advances the argument that the lower court erred in considering that appellee was the primary caretaker prior to the shared custody agreement. Although he concedes that appellee provided the majority of Jennifer's care during the first two and one-half years of her life, and exclusively for almost a year following the parties' separation, appellant asserts that the shared custody arrangement of 1983–1984 resulted in equally strong bonds of attachment between the child and both parents. Thus, he concludes that appellee's former role as primary custodian has been rendered irrelevant.

This Court has recognized the desirability of maintaining the continued residence of a child with a parent or custodian who has, "through daily affection, guidance, companionship, and discipline fulfill[ed] the child's psychological and physical needs...." *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 425, 448 A.2d 1113, 1115 (1982). Often, if all other factors are nearly equal, this factor "may be of critical importance to the formulation of an appropriate custody decree." *Harner v. Harner,* 330 Pa.Super. 343, 354, 479 A.2d 583, 589 (1984), quoting *Pamela J.K. v. Roger D.J.,* 277 Pa.Super. 579, 589, 419 A.2d 1301, 1307 (1980).

■ In this case, appellant may well have grown closer to his daughter through the joint custody arrangement. However, the strengthening of the bond between him and his child fails to dilute the past closeness and degree of commitment evinced by appellee's former role as primary caretaker. As appellant states in his brief, "the [primary caretaker] doctrine acts to preserve the strong bond between the caretaker and the child." The lower court did not deny Jennifer's attachment to appellant, but merely recognized, as one factor in the decision making process, the likelihood of a greater attachment to her mother. We find no error in the lower court's analysis of the child's care throughout her young life, especially in light of the relatively short duration of the shared custody.

■ Similarly, the record supports the trial judge's factual finding that the mother has a greater amount of time to spend with the child in view of her flexible, part-time work schedule. Although appellant contends that the lower court failed to consider that appellee's free time must be divided among Jennifer and her two other children from her first marriage, the court was fully apprised of appellee's familial responsibilities.

■ Moreover, the presence of two half-brothers in appellee's home was viewed favorably by the trial court in

ascertaining the best interests of the child. It is a well-settled policy of this Commonwealth that, where possible, siblings should be reared together. *In re Davis*, 502 Pa. 110, 465 A.2d 614 (1983).

■ Finally, appellant avers that his home is more stable and secure than that of appellee. The basis for this argument is that appellant lives alone in a rented house. Appellee, on the other hand, rents one-half of a duplex, and is very friendly with the family living in the other half. That family, which comprises a father and three children, spends a great deal of time with appellee and her children, often sharing meals and watching television together. However, we fail to see how such a relationship translates to "instability" in appellee's household, or how the same could be harmful to a child. The lower court found, and the record warrants such a conclusion, that the homes of both parties were appropriate and adequate to meet the needs of the child.

■ The lower court conceded that both parties were fit custodians for their daughter. Each appears from the record to be a mature, responsible, loving parent with the child's best interests at heart. In such cases, no clear answer presents itself, and the task of making a choice is a most difficult one for the judge to face. *See Ellingsen v. Magsamen*, 337 Pa.Super. 14, 486 A.2d 456 (1984); *Smith v. Smith*, 337 Pa.Super. 9, 486 A.2d 453 (1984). In reaching his decision to award custody of Jennifer to appellee during the academic year, the court found the scale to be tipped in favor of appellee on the basis of her prior role as caretaker and the presence of Jennifer's half-brothers. These considerations were valid and find much support in our caselaw. The trial judge's conclusion rests upon a solid foundation as confirmed by our scrutiny of the record, and affords no basis for a finding of error.

Order affirmed.