500 A.2d 91

**Kathy Jo BRESNOCK, a minor, Joseph J. Bresnock and Alice M. Bresnock, his wife, Appellants,**

v.

**Joseph R. BRESNOCK and Veronica R. Bresnock, his wife.**

Superior Court of Pennsylvania.

Argued April 18, 1985.

Filed Sept. 20, 1985.

Reargument Denied Nov. 15, 1985.

566

W.J. Krencewicz, Shenandoah, for appellants.

James R. Kilker, Pottsville, for appellees.

Before WICKERSHAM, BECK and CERCONE, JJ.

WICKERSHAM, Judge:

Joseph J. and Alice Bresnock appeal from the order of the Court of Common Pleas of Schuylkill County awarding custody of their granddaughter Kathy Jo to the child's mother, Veronica Bresnock Marzec.[1] The fifth party to this action, Kathy Jo's father, Joseph R. Bresnock, is now deceased.

Kathy Jo Bresnock was born on January 18, 1975. Her parents, Veronica and Joe Bresnock, were married subsequent to her birth, and the family, along with Veronica's older daughter April Lynn, moved to Goose Creek, South Carolina. There the parents operated "Guys and Dolls," a bar featuring go-go dancing. Veronica supplemented the family income by performing at various times over the years as a go-go dancer. During the time that the parents ran the bar business in South Carolina, they allowed Kathy Jo to go to the home of her paternal grandparents (appellants herein) in Frackville, Pennsylvania, for extended visits. There was differing testimony as to when these visits began, but in any case, by 1980, Kathy Jo was spending the majority of her time at appellants' home, and appellants were providing her with support.

In the fall of 1981, Veronica and Joe returned to Pennsylvania because of Joe's affliction with terminal brain cancer. Veronica made arrangements for April to stay with Veronica's sister in McKeesport, and she and Joe moved into appellants' home in Frackville. The relationship between

1. In November of 1983, during the instant proceedings, Veronica Bresnock married James Marzec, the natural father of her daughter April. They reside with April in or near McKeesport, Pennsylvania.

appellants and their son and daughter-in-law soon became estranged, however, caused in part by Joe's irrational and violent behavior resulting from the brain tumor. This estrangement resulted in appellants filing a petition for custody of Kathy Jo in January of 1982 and a protection from abuse petition against Veronica and Joe shortly thereafter. The latter matter was terminated by an agreement that Veronica and Joe would remove themselves from appellants' home, but allow Kathy Jo to remain there temporarily. Veronica and Joe resided in a motel in Frackville until May of 1982, when Veronica requested that appellants take Joe back to appellants' home because he was dying. Appellants did so. Veronica left Frackville at that point to attend to her daughter April, who was suffering from emotional problems allegedly brought on by prior sexual abuse at the hands of her step-father Joe Bresnock.

After Veronica left for McKeesport to be with April, Joe was hospitalized and subsequently died on June 26, 1982. Veronica returned to Frackville for her husband's funeral and then leased a home in Allegheny County in which she, April, and two elderly boarders lived. With the exception of a few short visits with her mother and sister, Kathy Jo remained with appellants. Custody hearings were held on October 5, 1982, April 5, 1983, March 15, 1984, and June 24, 1984, culminating in the court's order of August 28, 1984, awarding custody of Kathy Jo to Veronica. Appellants filed this timely appeal and were granted a supersedeas of the order by this court on September 10, 1984.

Appellants raise two issues before us:

1. Did the Court below err in awarding custody of the child to the mother, where the court failed to consider all relevant factors bearing upon the child's physical, emotional, moral and spiritual well-being?

2. Does this case come before the appellate court upon a stale record?

Brief for Appellants at 3.

The fundamental issue presented is whether the lower court erred in awarding primary physical custody of

Kathy Jo to Veronica, appellee herein. In reviewing custody orders, we, as an appellate court, are empowered to determine whether the lower court's incontrovertible factual findings support its factual conclusions, but may not interfere with these conclusions unless they are unreasonable in light of the lower court's factual findings, and thus, represent a gross abuse of discretion. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984); *Beers v. Beers,* 342 Pa.Super. 465, 493 A.2d 116 (1985). The burden of proving that the lower court's decision was manifestly erroneous or that it constituted a gross abuse of discretion falls upon appellant. *Id.* If appellant fails to meet this burden, then we have no choice but to affirm the decision of the trial judge. *Id.*

It is well settled that in resolving a custody dispute between a parent and a third party, including a relative such as a grandparent,

> the parents' right to custody will be forfeited only if convincing reasons "appear that the child's best interest will be served by an award to the third party." In such instances, the evidentiary scale favors the parent. What the hearing judge must do is to hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to tip the scale down on the third party's side.

*In Interest of James John M.,* 333 Pa.Super. 417, 422–24, 482 A.2d 637, 640 (1984). *See also, Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 455 A.2d 1180 (1983); *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980); *Commonwealth ex rel. Miller v. Miller,* 329 Pa.Super. 248, 478 A.2d 451 (1984); *Cady v. Weber,* 317 Pa.Super. 481, 464 A.2d 423 (1983), *appeal decided,* 322 Pa.Super. 550, 469 A.2d 1128 (1983); *Commonwealth ex rel. Strunk v. Cummins,* 258 Pa.Super. 326, 392 A.2d 817 (1978); *Commonwealth ex rel. Williams v. Miller,* 254 Pa. Super. 227, 385 A.2d 992 (1978); *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977).

■ In order to support their heavy burden, appellants allege that the lower court erred in failing to consider (1) the importance of preserving stability in Kathy Jo's life and the emotional ties established between Kathy Jo and appellants; (2) the questionable moral character of Veronica and its probable effect on Kathy Jo; (3) the lack of a stable environment for Kathy Jo at her mother's residence; (4) Kathy Jo's preference to remain with appellants and her feelings of bitterness, anger, and hatred towards Veronica; and (5) the traumatic effect on Kathy Jo if she were removed from appellants' home.

Upon careful examination of the record, it is apparent that, in resolving this custody case, the lower court applied the proper standard of proof as set out by the above-cited case law. After two and one-half years of litigation and four separate hearings, the court did, in a most painstaking and cautious manner, consider every aspect of Kathy Jo's best interests. In its findings of fact, the court found that the homes of both appellants and appellee were adequate; that the mother's new husband had an adequate income of between five and six hundred dollars per week; that the mother provided a comfortable home close to recreation facilities and Catholic schools; that Kathy Jo and her half-sister April indicated affection and got along well together; that the mother and her new husband enjoyed a normal and happy marital relationship; that appellants were ages sixty-nine and sixty-five and had maintained custody off and on since approximately 1978, providing for Kathy Jo's education, religious training, and care; that appellants have great concern and love for Kathy Jo; that the actions of appellants caused tension during the mother's attempts to visit her child; that there were several visits with the child since the mother's marriage; and that the periods of marital strife between the mother and the late father and also between them and appellants herein were difficult times and were now behind them and did not affect the present situation.

■ We find adequate support in the record for all these factual findings and also find that they support the lower court's conclusions. Furthermore, the lower court properly considered all of the relevant factors in providing for the best interests of Kathy Jo. Stability is certainly a factor, but it is not the sole criteria in a custody action. The fact that a child has not lived with a parent for a considerable length of time will not alone defeat that parent's right to custody. *In re Adoption of Farabelli,* 460 Pa. 423, 333 A.2d 846 (1975); *In Interest of James John M., supra; In re Custody of Hernandez, supra.* The court found both appellants and appellee capable of offering stable environments for Kathy Jo.

■ Another factor considered by the court is that absent compelling reasons, siblings should be raised together whenever possible. *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980); *Pilon v. Pilon,* 342 Pa.Super. 52, 492 A.2d 59 (1985); *Haag v. Haag,* 336 Pa.Super. 1189, 485 A.2d 1189 (1984). The court considered that Kathy Jo and April showed affection towards one another, and by placing Kathy Jo's physical custody with her mother, she would be reunited with her sister.

■ Likewise the court considered the fact that Kathy Jo expressed a desire to remain with her grandparents, and it acknowledged that she loved her grandparents very much. A minor child's expressed preference to remain with a particular custodian is clearly a factor which should be considered, but it is not controlling. *Hartman v. Hartman,* 328 Pa.Super. 154, 476 A.2d 938 (1984); *K.L.H. v. G.D.H.,* 318 Pa.Super. 330, 464 A.2d 1368 (1983); *Commonwealth ex rel. E.H.T. v. R.E.T.,* 285 Pa.Super. 444, 427 A.2d 1370 (1981); *Palmer v. Tokarek,* 279 Pa.Super. 458, 421 A.2d 289 (1980). The weight to be accorded the child's preference is to be determined by the trial court. *K.L.H. v. G.D.H., supra; Commonwealth ex rel. Grimes v. Grimes,* 281 Pa.Super. 484, 422 A.2d 572 (1980). The fact that a child has been well cared for and loved by her grandparents and the fact that the child prefers to remain with them,

does not amount to such "convincing reasons" as would overcome the parent's right to have custody of the child. *Palmer v. Tokarek, supra.* Furthermore, much of the anger expressed by Kathy Jo towards her mother appears to have been the result of statements made to the child by appellants.[2] We note that Kathy Jo's testimony concerning her mother was somewhat equivocal; she testified both that she hated her and that she liked her a little.

Nor did the court err in not finding Veronica to be a person of questionable moral character. The court stated that Veronica had supported herself, Joe, and her daughters by working as a go-go dancer and operating the Goose Creek bar. She testified that Joe was physically abusive and made her continue in this occupation. At some point in 1981, the bar was raided, and she, along with others, was arrested and fined. Both daughters were born out of wedlock, but she later married each girl's father. She left Joe shortly before his death, but she explained that this was only because she had just discovered his alleged abuse of April. The court also considered that at the time of the first hearings, Veronica was no longer employed as a dancer. She was running a home for the aged, and the home study showed that the home and environment provided by Veronica was indeed clean, tidy, and adequate for the raising of her daughters. By the time of the last two hearings, Veronica had remarried, and was enjoying a stable, happy marital relationship.

 A parent's ability to care for her child must be determined as of the time of the custody hearing, not as of an earlier time. *Hall v. Mason,* 316 Pa.Super. 160, 462 A.2d 843 (1983); *In re Custody of Frank,* 283 Pa.Super. 229, 423

**2.** Kathy Jo was evidently led to believe that candy sent to her by her mother was sent to make her and her grandmother sick; that her mother's leaving her father was the cause of his death; that the court order given to them in the Pizza Hut parking lot may have been physically harmful to them; that the grandparents and parents argued many times; that the grandfather had thrown her mother out of the house on at least two occasions; that her half-sister, April, had done something bad to her father; and that her mother left her and her father flat broke so that she could not pay the funeral bill.

A.2d 1229 (1980). Further, unless it can be shown that the parent's conduct has had a harmful effect on the child, it should have little weight in making a custody decision. *In re Custody of Pearce,* 310 Pa.Super. 254, 456 A.2d 597 (1983). *See also Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976); *In re Wesley J.K.,* 299 Pa.Super. 504, 445 A.2d 1243 (1982); *Commonwealth ex rel. Grimes v. Grimes, supra.* Custody cannot reasonably be granted on the basis of a parent's unsettled past unless the past behavior has an ongoing negative effect on the child's welfare. *Hartman v. Hartman, supra.* There is absolutely no evidence in the record before us that Veronica's past conduct has had any adverse effect on Kathy Jo, and, in any case, such conduct was just that—past—at the time of the hearings.

Finally, the court did consider the effect on Kathy Jo if appellee were given custody. The record contains testimony of an adoption coordinator from Schuylkill County Children and Youth Services, stating that, assuming Kathy Jo had lived with appellants for as long as appellants claimed, a *sudden* change in custody would be traumatic. Such a change would require preparation, visiting, planning, and cooperation. A social worker from Allegheny County also recommended a transition period if custody were transferred, and reported that Veronica was aware that Kathy Jo might have some adjustment problems and was ready to deal with them. Our review of the record shows that, before 1982, Kathy Jo had not lived *exclusively* with appellants (as represented to the adoption coordinator), but rather had lived with appellants and/or her parents together and separately at various times and in various locations over the years. The lower court considered all this, and noting that Kathy Jo is an intelligent and sensitive girl, it decided that she could make the necessary adjustment required by a custody grant to her mother. We agree.[3] *See Moorman v. Tingle,* 320 Pa.Super. 348, 467 A.2d 359

---

3. As the lower court pointed out, it would help Kathy Jo's adjustment a great deal if the mother and grandparents would try to get along and remember that they are all concerned with Kathy Jo's welfare.

(1983), *aff'd,* 505 Pa. 513, 481 A.2d 854 (1984); *Palmer v. Tokarek, supra; Commonwealth ex rel. Strunk v. Cummins, supra.* Furthermore, we find it difficult to visualize a transfer of custody from a present custodian to a non-custodian that would not be fraught with some trauma for a child.

In summary, the lower court took into consideration those factors which should be considered in determining the child's best interest. It had the opportunity to observe the witnesses and the child, and to decide whether appellants' evidence was weighty enough to tip the scales from Veronica's side to appellants' side. Appellants simply presented no convincing reasons why appellee's prima facie right to the custody of Kathy Jo should be forfeited. Thus, we find no abuse of discretion in the court's award of custody to appellee.

 Appellants also argue that this case comes before us upon a stale record, so it should be remanded for further hearings. Appellants give as reasons for the staleness: (1) appellee has moved since the last hearing to a rural area outside McKeesport, (2) there has been no home evaluation of her present residence, and (3) it is unknown whether she still takes in boarders, lives with James Marzec, what her source of income is, or whether there are any school, churches, or other facilities nearby.

We find that none of these "reasons" require the record to again be opened and to result in yet further delay in transferring custody of Kathy Jo to her mother. Mr. Marzec testified at the March 15, 1984 hearing that he foresaw the family moving in the near future from their present rented residence to a purchased home. We have no reason to doubt that appellee has made sufficient arrangements in her new home for Kathy Jo's return.

As appellee points out, we do not know whether appellants still live in the same house that was evaluated, whether their health is holding out, or whether a host of other possible changes have occurred since June of 1984. Due to

the very nature of the court system, it is impossible to have instant determinations of appeals such as this. As in any other case, any number of events may have occurred in the interim between the lower court order and our decision. The lower court order herein was entered on August 28, 1984. We doubt that events have changed so dramatically since then so as to justify a remand in this already prolonged dispute. Four hearings resulted in extensive testimony from numerous witnesses. Based upon the record obtained therefrom, we suspect that this is just another attempt by appellants to delay Kathy Jo's transfer. Appellants have already enjoyed the benefit of a three and one half year delay, including a supersedeas of the lower court order. Further unnecessary delay would be inexcusable. We remind appellants that in determining the proper custody of children, conditions must be evaluated as they exist *at the time of the hearing. Brooks v. Brooks,* 319 Pa.Super. 268, 466 A.2d 152 (1983); *In re Custody of Frank, supra.* That is exactly what the lower court did herein, and we affirm.

Order affirmed.