584 A.2d 1034

**Kyle STOLARICK, Appellant,**

v.

**Amy S. NOVAK, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 7, 1990.

Filed Jan. 14, 1991.

Donald A. Semisch, Willow Grove, for appellant.

Roy M. Owens, Hatfield, for appellee.

Before WIEAND, KELLY and CERCONE, JJ.

WIEAND, Judge:

In this proceeding to modify an agreed custody order for two children, the trial court found that the father, with whom the children had lived after their mother left home in 1985, was an exemplary parent, who adored and cared for the children "on a standard of excellence in a physical,

psychological and nurturing sense." The court nevertheless took the children from their father's home and awarded custody to their mother because the court disapproved of the father's fundamentalist Christian beliefs and his enrollment of his children in a Christian school. After careful consideration, we reverse.

Our scope of review was defined in *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341 (1988), *allocatur denied*, 524 Pa. 629, 574 A.2d 70 (1990), as follows:

In reviewing a custody order, we are not bound by findings of fact made by the trial court which are unsupported in the record, nor are we bound by the court's inferences drawn from the facts. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 294–295, 368 A.2d 635, 637 (1977). However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. *Id.*, 470 Pa. at 295, 368 A.2d at 637. Only where we find that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination. *Murphey v. Hatala*, 350 Pa.Super. 433, 439, 504 A.2d 917, 920 (1986), *appeal denied*, 516 Pa. 634, 533 A.2d 93 (1987) citing *Mielcuszny v. Rosol*, 317 Pa. 91, 176 A. 236 (1934); *Commonwealth ex rel. Berman v. Berman*, 289 Pa.Super. 91, 432 A.2d 1066 (1981). Therefore, unless the trial court's ruling represents a gross abuse of discretion, we will not interfere with its order awarding custody. *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 597–598, 296 A.2d 838, 841 (1972), quoted in *Lombardo v. Lombardo*, 515 Pa. 139, 148, 527 A.2d 525, 529 (1987).

*Id.* 380 Pa.Super. at 21, 550 A.2d at 1343. See also: *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 237, 478 A.2d 800, 806 (1984); *Beers v. Beers*, 342 Pa.Super. 465, 468, 493 A.2d 116, 117 (1985). "[P]etitions for modification of custody orders may be filed at any time, and in all such cases the court hearing the petition must consider the best

interest of the child or children," *Martin v. Martin*, 386 Pa.Super. 328, 332, 562 A.2d 1389, 1391 (1989), *allocatur denied*, 524 Pa. 629, 574 A.2d 70 (1990), including the child's physical, intellectual, emotional and spiritual well-being. *Commonwealth ex rel. Newcomer v. King*, 301 Pa.Super. 239, 244, 447 A.2d 630, 633 (1982); *In re Arnold*, 286 Pa.Super. 171, 428 A.2d 627 (1981). See also: *Egelkamp v. Egelkamp*, 362 Pa.Super. 269, 271–272, 524 A.2d 501, 502 (1987).

Kyle Stolarick and Amy Novak, formerly husband and wife, are the parents of two children, Tara Lynn, who was born August 23, 1979, and Kyle Gene, who was born December 18, 1981. Kyle and Amy separated in 1985, when Amy left home, and Kyle, on April 4, 1985, petitioned for custody of the children. The parties entered a temporary stipulation, approved by the court on May 21, 1985, for shared legal custody, but with primary physical custody in Kyle. In July, 1988, the matter was again before the court and was again resolved by an agreed order, dated September 7, 1988, awarding shared legal custody, with primary physical custody in father and frequent visitations for mother. In November, 1989, Amy petitioned for an order awarding primary physical custody to her. After several hearings, the court granted Amy's petition, removed the children from their father's home and awarded custody to their mother.

Following separation, Amy moved in with James Ceneviva, with whom she and a newborn son live in a two bedroom apartment. The Stolarick children have lived with their father in the family home, a three bedroom, Cape Cod dwelling, situated on approximately a half acre of land. Stolarick, who is employed as an electronic technician, cooks, cleans, does the laundry and maintains the household. The children are enrolled at Trinity Christian Academy, a private religious school, and attend Independent Bible Church. They are ably cared for and appear to be happy, well adjusted, and popular with their friends. The trial court found no fault with the father's rearing of his chil-

dren except for his fundamentalist Christian beliefs and his enrolling the children in a Christian school. With respect to this aspect of the case, the court opined:

> On the surface this seems like an ideal adaptation under the circumstances but it is the degree to which the father has pursued "life in the Lord" that has deprived the children of social and educational opportunities and has presented them with a singleminded approach to life that is very restricted in view and allows for no spontaneity, artistic expression or individual development of rationale or logic or even just pursuit of ordinary curiosity. These children are being raised in a sterile world with very rigid precepts, with no allowance for difference of opinion, and no greater breadth then the doctrinaire limits of the religious beliefs.

These judgments, however, represent the views of the trial judge. They are not supported by evidence appearing in the record.

■ Religion is an important matter and should be given consideration in child custody matters, but it is not determinative. *Boylan v. Boylan*, 395 Pa.Super. 280, 283, 577 A.2d 218, 219 (1990); *Egelkamp v. Egelkamp, supra* 362 Pa.Super. at 272–273, 524 A.2d at 503; *Rinehimer v. Rinehimer*, 336 Pa.Super. 446, 450, 485 A.2d 1166, 1168 (1984); *Morris v. Morris*, 271 Pa.Super. 19, 28, 412 A.2d 139, 143 (1979). The Court in *Morris v. Morris, supra,* stated:

> [W]e neither intend to, nor are capable of, rendering a value judgment on the intrinsic truth of the varied religious beliefs, but confine our investigation solely to any detrimental effect their practice may have on the development of the child.

*Id.,* 271 Pa.Superior Ct. at 28, 412 A.2d at 144. See also: *Commonwealth ex rel. Derr v. Derr*, 148 Pa.Super. 511, 25 A.2d 769 (1942), *cert. denied,* 317 U.S. 631, 63 S.Ct. 57, 87 L.Ed. 509 (1942) ("it is not our province to attempt to weigh and determine the merits of the particular religious faith which the wife espoused as compared to the religious faith of the husband, who was a Methodist, or of any other").

■ With respect to Kyle's religious fervor, the testimony indicates that he has not pursued religion at the expense of neglecting his children. Through Kyle's testimony, as well as numerous others attesting to his relationship with his children, we see that he has played an active role in the children's educational, recreational and spiritual lives. On Kyle's behalf, testimony was elicited that the children are well mannered, affectionate toward each other, happy, responsible and well adjusted. This is not the case of a parent engulfing his life in religious pursuits and abandoning his children. Compare: *Commonwealth ex rel. Derr v. Derr, supra* (mother properly deprived of custody of her two children because her activities as a Jehovah's Witness left little time to devote to the care of her children).

The evidence does not disclose that the children's education was deficient in any way. Trinity Christian Academy was accredited by the American Association of Christian Schools. Tara was in the fifth grade and Kyle was in the third grade. The curriculum covers the core educational subjects as well as a full course in Christian non-denominational religious education. The students also participate in physical education, art and music classes. The teachers are graduates of religious affiliated colleges. The school supervisor, Mrs. Middleton, testified that the goal of the school is high academic standards, character development and leadership training. She said that the childrens' academic progress had been normal and in some respects above average. Both children scored in the average percentile in the California Achievement Tests. There is no evidence that would support the trial court's belief that the children have been deprived of social and educational opportunities and have been restricted in artistic expression or individual development of logic because of their attending a religious school.

■ After their mother left them, the children continued to live with their father in the marital home, and he has been the primary caretaker. The record suggests that his efforts have been successful. The courts have signalled the

importance to a child's development of a stable relationship with an established parental figure and a known physical environment. Where both parents are determined to be equally fit, the fact that a stable, long-continued and happy relationship has developed between the child and one parent may be of critical importance to the formulation of a custody decree. *English v. English*, 322 Pa.Super. 234, 240–241, 469 A.2d 270, 273 (1983). Thus, in *Commonwealth ex rel. Jordan v. Jordan*, 302 Pa.Super. 421, 448 A.2d 1113 (1982), Judge Beck wrote:

> The removal of a young child from an established home with one parent has long been recognized as a factor which bears upon his emotional well-being. A child "becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it." *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949); *accord, In Interest of Tremayne Quame Idress R.*, 286 Pa.Super. 480, 429 A.2d 40 (1981); *Jon M.W. v. Brenda K.*, 279 Pa.Super. 50, 420 A.2d 738 (1980).

> It is clear that the continued presence of a fit parent who through daily affection, guidance, companionship, and discipline fulfills the child's psychological and physical needs is crucial to the child's emotional well being. The countless transactions between parent and child on a day to day basis build the foundation for the child's future healthy development. The Pennsylvania courts have recognized this principle and have held that the "continued residence of children with one parent is a factor which may, in certain cases, be controlling." *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 369 A.2d 821, 824 (1977). See also *Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980).

> Changes in custody can seriously disrupt a child's life. A child of tender years should not be lightly removed from a parent with whom the child has lived since birth.

> Furthermore, insofar as a parent's past performance is likely to be predictive, judicial inquiry to determine the

identity of the primary caretaker will yield evidence concerning the future commitment of a parent. If in the past, the primary caretaker has tended to the child's physical needs and has exhibited love, affection, concern, tolerance, discipline and a willingness to sacrifice, the trial judge may predict that those qualities will continue.

*Id.,* 302 Pa.Superior Ct. at 425–426, 448 A.2d at 1115 (footnotes omitted).

The record in the instant case reveals no basis for the trial court's belief that the childrens' horizons would be broadened by removing them from the "sterile" environment of a religiously oriented school. Both parents adore the children and are genuinely interested in playing a role in their future. For five years since the separation of their parents, however, they have lived with their father in a single residential home, and their father has ably devoted himself to their care. Under these circumstances, the trial court abused its discretion when it suddenly took them from the only home and family which they have known and awarded them to another whose facilities, if not inadequate, were less desirable and less familiar than those to which the children had been accustomed.

The trial court's order of May 2, 1990 is reversed. The order of September 7, 1988, which approved the parties' custody agreement, is reinstated, and the case is remanded to the trial court to consider and determine an appropriate schedule of visitation for appellee-mother.[1] Jurisdiction is not retained meanwhile.

1. In light of this decision we do not specifically address appellant's claim that the court erred in the procedure followed while conducting an in camera session with the children. Suffice it to observe that the proper proceedings are governed by Pa.R.C.P.1915.11. See: *Gerald G. Junior v. Theresa G.,* 284 Pa.Super. 498, 426 A.2d 157 (1981) (when a hearing judge interviews a child in a custody case: (1) counsel must be present; (2) counsel must have the opportunity to question the child; and (3) the testimony must be transcribed and made a part of the record).