## Armistead v. Sewell

*Robin Eisenhart Armistead,* pro se.
*Joel Merrow,* for defendant.
*John J. Grenko,* guardian ad litem.

GRIM, *P.J.,* November 29, 2005—The matter before the court is a custody dispute. The pertinent facts and procedural history are as follows.

The parties were never married. Their daughter, Princess Paige Tryci Sewell Eisenhart (Paige), was born on January 21, 1996. On September 24, 1997, they entered into a stipulation and order that granted plaintiff, Robin Eisenhart Armistead, Mother, primary physical custody and defendant, Paul Sewell, Father, partial physical custody.

In 2003 Father filed a petition for modification to obtain more extensive periods of partial physical custody. Mother opposed Father's petition. Father filed exceptions to the custody master's recommendation. On December 5, 2003, the parties entered into a custody agreement that increased Father's periods of partial physical custody. The agreement provided for further review.

In March 2004, Father filed a protection from abuse petition on behalf of Paige against Mother's husband, Harry Armistead. The parties entered into a protection from abuse order by agreement. Harry agreed to not consume alcohol or be under the influence of alcohol when in the child's presence and to engage in alcohol and anger management counseling.

In June 2004, Mother and Harry filed cross petitions for protection from abuse. Mother alleged that Harry had been drunk and physically abused her and their dog. Mother's older child, Trey, verified Mother's statements. Harry asserted that Mother had physically and mentally abused him. The petitions were dismissed. However, Harry entered a guilty plea in the indirect criminal contempt case arising out of the violation of Paige's protection from abuse order.

In August 2004, Father filed a petition for special relief seeking primary physical custody of Paige. In October 2004, the parties entered into an agreed order granting primary physical custody of the minor child to Father. In November 2004, the court appointed John J. Grenko, Esquire as the guardian ad litem for Paige.

A custody hearing on the underlying petition for modification was held in November 2005. Although Mother was represented by various counsel in the past she elected to proceed pro se in the instant proceeding. The following evidence was submitted at the hearing.

Father lives with his girlfriend, Christa, her son, their daughter, Precious, and his children, Paige, Tiger, and Keyera. Paige's transition to his household went smooth-

ly. Paige has her own bedroom which she shares with a half sister on alternate weekends.

Paige is in third grade. She presently receives Bs and Cs on her report cards. Before Paige lived with Father she received Ds and Fs. The child is picked up at school daily. Father contacts the child's teachers regularly.

Pursuant to the present order Mother has custody of Paige on alternate weekends from noon to 6 p.m. on Saturday and Sunday and one evening per week from 6 p.m. to 8 p.m. as the parties agree. Mother, however, does not always exercise her custodial rights. She either does not show up or calls just 15 to 20 minutes before her scheduled custodial period to say that she is not coming.

Several times Mother brought the child back early. In September 2005, Mother wanted to return Paige early because she claimed she could not handle her but Father was unavailable. Instead, Mother dropped the child off at the residence of the maternal grandfather without notice to anyone. She referred to the child by using an obscene epithet.

Father testified that he does not have any major problems with Paige's behavior. When Paige had resided with Mother she had taken medications to control her behavior. Father stopped the medications. Mother wants the child to be put back on the medications because she cannot handle her during her custodial periods. Mother has recently refused to take the child and wants Paige just on Sunday afternoons.

A partial evaluation was performed on Paige that suggests that she might have ADHD. The guardian ad litem

recommends that the evaluation be completed and that the parties follow the recommendations.

Father's children are allowed to use the telephone from 9 a.m. until 7 p.m. Father has never interfered with Paige's telephone contact with Mother. However, Paige does not have Mother's telephone number.

The child is very distraught about the custody proceeding. Father testified that he does not discuss the case with Paige and he tells her that Mother loves her. Mother discusses the case with the child and calls Father obscene names. Father stated that Mother had told the child that she will move to Maine and will not see her again.

Paige has been receiving counseling. She has improved since she has been in therapy. Father is willing to have her continue in therapy.

Father wants to retain primary physical custody because he is worried about Harry's alcoholism and abuse. He is also concerned about the yelling and verbal abuse that occurs in Mother's household.

Father's testimony is uncontroverted because Mother refused to testify. She did indicate that the custody proceedings broke up her marriage to Harry. However, in later communications to Paige she refers to Harry as "Dad" and writes that he misses her. The court also notes that a communication was sent to the court and Father's counsel from Mother that included Harry in the return address and was signed by Mother as "Mrs. Armistead."

Grandfather testified that he enjoys a close relationship with Paige. He sees the child more since she has been living with Father. Grandfather does not get along

with Harry because he is disturbed about the way Harry treats Mother and his grandchildren. He believes that the children are afraid of Harry. He thinks that Harry is capable of physically harming the children.

Grandfather is a foster parent. He does not believe that Mother knows how to discipline her children. He saw Mother pull Paige's hair and slap her. On the day that Mother deposited Paige with Grandfather without notice, the child had been screaming and crying and had grabbed him by the legs.

Mother disowned her parents and siblings. She does not have relationships with them at the present. When Grandfather finished testifying she uttered angry words at him.

Paige has mixed feelings about living with Father. Sometimes she fights with her siblings. She does not like when Father uses corporal punishment.

Paige also gets in fights with Trey. Harry was mean at times. He yelled and threw things a lot. She was sad when she got in trouble and wanted to live with Father. Sometimes Mother and Harry were fun.

Paige wants to live with Mother and see Father on alternate days or more often if she would want to do so.

The guardian ad litem believes that Father presents a more stable environment for the child. He believes that the relationship between Paige and Mother is seriously strained. He wants counseling to occur between Mother and the child to improve their relationship. He wants the parties to participate in co-parenting counseling.

The court's paramount concern in a child custody dispute is the best interests of the child, and it is required to modify orders when the child's best interests require that they be modified. *Skomo v. Skomo,* 844 A.2d 1256, 1258 (Pa. Super. 2004). In determining the proper custody of a child, conditions must be evaluated as they exist at the time of the hearing. *Bresnock v. Bresnock,* 346 Pa. Super. 563, 572, 500 A.2d 91, 96 (1985).

The court agrees with the guardian ad litem that at this time Father's household offers a more stable environment than Mother's residence. The court is unclear about Mother's environment. In court she indicated that due to this proceeding her marriage to Harry is over. Harry did not attend the hearing. However, Mother refers to Harry in her letters to Paige and the court. Thus, it appears that Harry and Mother have reconciled yet again.

Harry presents concerns to the court. He has anger and emotional issues. Since Harry did not testify, the court had no opportunity to observe him and to determine his opinion about Paige living with or visiting Mother. Therefore, the court will not make an order that includes Harry.

The particular weight to be given a child's preference as to custody is to be determined by the trial judge who sees and hears the child, depending to a great extent upon the age, maturity and intelligence of the child. *Mahoney v. Mahoney,* 354 Pa. Super. 585, 591, 512 A.2d 694, 698 (1986).

The court does not find that Paige's preference is controlling in the case sub judice. Paige is young and immature. She is clearly conflicted. She misses the parent with whom she does not live. Although she expressed a pref-

erence to live with Mother, she wants to see Father on alternate days; in essence, she would like a shared custody arrangement. Indubitably, Paige is uncomfortable around Harry. She did not communicate any desire to see Harry.

The court finds that it would be in Paige's best interest to finish the evaluation that was partially undertaken on her. The evaluation will resolve the issue of whether the child needs medication to modify her behavior. The court is disturbed that Mother and Father are at opposite sides on this issue. It is also troubled that Mother does not attempt to see Paige on a regular basis as long as the child is not medicated.

The court is unable to find that Mother is a viable option for primary custody. Her relationship issues are overwhelming. Her marriage to Harry is turbulent and she has "divorced" her parents and siblings. Mother's relationship with Paige is far from ideal. She forfeits her custodial periods because she cannot deal with Paige unless she is medicated. The court notes that although the usage of medication for behavior modification may ultimately be in the child's best interests, the child has been functioning in school and in Father's household without it.

In accordance with the foregoing opinion, the court enters the following order.

## ORDER

And now, November 29, 2005, it is hereby ordered and decreed as follows:

(1) The parties shall share legal custody of the minor child, Paige, date of birth, January 21, 1996.

(2) Defendant, Paul Sewell, Father, shall have primary physical custody of the child.

(3) Plaintiff, Robin Eisenhart Armistead, Mother, shall have periods of partial physical custody as follows:

(a) Alternating weekends from noon to 6 p.m. on Saturday and noon to 6 p.m. on Sunday.

(b) One evening per week from 6 p.m. to 8 p.m. as the parties may agree. Failing agreement, this visitation shall occur on Wednesdays.

(c) At such other times as the parties may mutually agree.

(4) Mother shall initiate counseling with Berkshire Psychiatric & Behavioral Health Services to learn better parenting skills and to improve her relationship with Paige. Mother shall certify to the court that she is receiving counseling and provide proof of enrollment. Paige shall participate in the therapy as determined by the therapist. Counseling is to continue until the therapist determines that it is not necessary. Professional reports are to be made available to this court periodically and upon cessation of the counseling. Insurance shall be accessed to pay for the therapy. Any unpaid expenses shall be paid by the parties equally.

(5) Upon certification by the counselor that in his or her professional opinion Mother can cope with the demands of parenting Paige, overnight periods of custody may commence on alternating weekends from Friday at 6 p.m. until Sunday at 6 p.m.

(6) At no time is Harry Armistead permitted to be present during Mother's periods of partial physical custody.

(7) Mother shall have custody of the child on Mother's Day from 9 a.m. to 6 p.m. and Father shall have custody of the child on Father's Day from 9 a.m. to 6 p.m.

(8) Mother shall have the child from 6:30 p.m. Christmas Eve to noon on Christmas Day. Father shall have the child from noon on Christmas Day to noon on December 26.

(9) The parties shall alternate custody of the child on the following holidays: New Year's Eve and New Year's Day, Easter Sunday, Memorial Day, July Fourth, Labor Day, and Thanksgiving. Custody for the holidays shall be from 9 a.m. until 8 p.m.

(10) The parties shall alternate custody of the child on her birthday. If the birthday falls on a school day, custody shall be from 6 p.m. to 8 p.m.; otherwise custody shall be from 9 a.m. until 8 p.m.

(11) Both parties shall have the following rights with respect to the child: reasonable telephone calling privileges limited to one call per day except when the child is ill; access to report cards and other relevant information concerning the progress of the child in school; approval of extraordinary medical and/or dental treatment except in the case of an emergency and provided that such approval shall not be unreasonably withheld; and approval of summer camp and schools provided that such approval shall not be unreasonably withheld.

(12) In the event of any serious illness of the child at any time the party then having custody of the child shall

immediately communicate with the other party by telephone or any other means, informing the other party of the nature of the illness. During the illness, each party shall have the right to visit with the child as often as he or she desires, consistent with the proper medical care of the child. The word "illness" as used herein shall mean any disability which confines the child to bed under the direction of a licensed physician for a period in excess of 48 hours.

(13) Neither party shall disparage or denigrate the other parent in the presence of the child nor permit others to do so, and each party will endeavor to encourage the development of the parent-child relationship between the child and each parent.

(14) The minor child shall complete her diagnostic evaluation that was begun by David Nicodemus at HealthSouth Diagnostic Center of Reading. The parties shall follow his recommendations unless a party petitions the court that he or she believes that such recommendation is *clearly* not in the child's best interest.

(15) The minor child shall continue in therapy until released by her therapist.

(16) Mother shall immediately provide the minor child with her telephone number.

(17) Neither party shall discuss any provision of this order or any aspect of the custody proceeding with the child.

(18) Appendix A is attached to and made a part of this order.

## APPENDIX A

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the children:

(a) The right to reasonable telephone contact with the children when they are in the other parent's custody.

(b) The right to be fully informed concerning the progress of the child in school and the child's medical status, including the right to obtain the necessary information directly from the child's school or medical practitioner; and

(c) The right to be informed in advance before any important decisions are made concerning the child and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the child at any time, any party then having custody of the child shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the child as he or she desires consistent with the proper medical care of the child.

(3) Neither party shall alienate nor permit or attempt to alienate the child from the other party. While in the presence of the child, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the child should respect and love.

(4) Both parties shall provide each other with the addresses and telephone numbers of their residences and any time they take a trip with the children out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their children.

(6) The parties shall at all times consider the child/children's best interests, and act accordingly. It is in a child's best interests to understand that he or she is trying to desperately cope with the fact of his parent's separation, and needs help in loving both parents, rather than interference or censure.

(7) Neither party shall question the children as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the children. By this we mean that the children will not be used as spies on the other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their children proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(a) Arrangements will be worked out beforehand between the parties without forcing the children to make choices and run the risk of parental displeasure. However, the children shall be consulted as to their schedules when appropriate.

(b) Visitation rights should be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the needs and desires of the minor children.

(c) If a party finds him or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the children to unnecessary apprehension and failure of expectations.

(d) The party having custody of the children should prepare them both physically and mentally for the transfer of custody to the other party and have them available at the time and place mutually agreed upon.

(e) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the children.

(f) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.