Christine A. THOMAS, Appellee,

v.

Robert W. THOMAS, Appellant.

Superior Court of Pennsylvania.

Argued June 14, 1999.

Filed Sept. 30, 1999.

John C. Howett, Jr., Harrisburg, for appellant.

Edward J. Zamborsky, Allentown, for appellee.

Before McEWEN, President Judge, and CAVANAUGH, KELLY, POPOVICH, JOHNSON, FORD ELLIOTT, STEVENS, SCHILLER and LALLY-GREEN, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Lehigh County granting Mother's petition for primary custody and relocation of the parties' three minor children to Mobile, Alabama. Herein, Father contends that the trial court erred in granting the petition since (1) the trial court erred in considering the factors enunciated in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990), and (2) the trial court erred in failing to consider the best interest of the children. In the alternative, Father contends that, even if the *Gruber* analysis is applicable, the trial court erred in finding that Mother met the standards enunciated therein. For the reasons that follow, we vacate the trial court's custody/relocation order and remand for a trial court opinion consistent with this Opinion.

¶ 2 The relevant facts and procedural history are as follows: Mother and Father were married in May, 1987 and three children were born as a result of their marriage: Raymond, born August 23, 1990; Robert, born May 9, 1992; and Samantha, born March 24, 1994. The parties separated in December, 1994, but continued to live together in the marital home until Mother moved out on July 1, 1995. Following a hearing with a custody master, an agreed upon order was entered on August 28, 1995, whereby the parties would share physical and legal custody of the children by an equal three day-four day, four day-three day arrangement.

¶ 3 A divorce was granted to the parties on July 3, 1997, and, three weeks later, Mother filed a petition for modification of the custody agreement, requesting primary physical custody of the three children and permission to relocate them to Mobile, Alabama in order to live with her and her soon-to-be husband, Gregory Grindstaff.[1] Grindstaff, who was a family friend and worked with the parties at Air Products and Chemicals, Inc. (Air Products) in the Lehigh Valley area, accepted employment in Alabama after being laid off from Air Products in February, 1997. Father opposed the relocation and filed a counter petition for primary physical custody.

¶ 4 After two days of hearings, the trial court granted Mother's petition for relocation and primary physical custody. Father then filed a petition for reconsideration; however, the trial court failed to enter an order expressly granting or denying reconsideration within the applicable time period. Thereafter, Father filed a timely direct appeal with this Court on September 26, 1997. *See* Pa.R.A.P. 1701(b)(3).

¶ 5 Following appellate argument, a three-judge panel of this Court filed an opinion on July 28, 1998. Thereafter, Father filed a motion for re-argument *en banc*, which was granted by this Court,

1. Mother and Grindstaff were married on August 1, 1997.

and the original panel opinion was withdrawn.

¶ 6 Our review of child custody matters is well settled:

On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to [substitute] our judgment for that of the trial court. Rather, we are bound by findings supported by the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Baldwin v. Baldwin,* 710 A.2d 610, 612 (Pa.Super.1998) (citations and quotation omitted).

¶ 7 Father's first contention is that the trial court erred in considering the *Gruber* factors in the case *sub judice* since *Gruber* addresses a relocation petition filed by a parent who had *primary* physical custody, while the case at issue involves a relocation petition filed by a parent with *equal shared* physical custody. Father urges this Court to find that the appropriate standard in equal shared custody cases is the "best interest of the children" and that the *Gruber* factors should not be considered. Mother, on the other hand, argues that the trial court was permitted to consider the *Gruber* factors, with the best interest of the children as the paramount concern. For the reasons set forth *infra,* we conclude that, in relocation cases where the parties have equal shared physical custody, the *Gruber* factors are applicable and should be considered as part of an overall "best interest of the child" analysis.

¶ 8 In *Gruber,* this Court stated that in every relocation dispute, the trial court must consider:

the custodial parent's desire to exercise autonomy over basic decisions that will directly affect his or her life and that of the children; a child's strong interest in maintaining and developing a meaningful relationship with the non-custodial parent; the interest of the non-custodial parent in sharing in the love and rearing of his or her children; and finally, the state's interest in protecting the best interests of the children.

*Gruber,* 583 A.2d at 439. With this in mind, the *Gruber* panel enumerated the following three factors for consideration by trial courts:

(1) The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

(3) The availability of realistic, substitute arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Zalenko v. White,* 701 A.2d 227, 228 (Pa.Super.1997) (*citing Gruber, supra* ).

¶ 9 Father correctly points to the fact that the *Gruber* factors have not explicitly been applied in cases where the parties share equal physical custody, and one party seeks permission for primary physical custody and permission to relocate out of the state. However, we hold that the *Gruber* factors should be considered in such a situation.

¶ 10 *Gruber* begins by announcing that: "The issue in this case is the standard to be applied by a trial court in determining under what circumstances a parent who has *primary physical custody*

may relocate outside the jurisdiction of the court." *Id.* 583 A.2d at 435 (emphasis added). However, although the *Gruber* panel expressly indicated that it was not addressing "the situation in which the parents share physical custody of the child[ren] and each has an equal amount of time with the child[,]" it expressly indicated that "where appropriate[,] the standards set forth as to relocation as advanced in this opinion should apply." *Id.* at 437 n. 6. Therefore, contrary to Father's contention, the *Gruber* decision is not specifically limited to a primary physical custody situation and may be applied in other situations, such as equal shared custody, where it is appropriate to do so. As such, we must determine whether it is appropriate to consider the *Gruber* factors in this particular case.

¶ 11 In making this determination, we are mindful that case law makes it clear that "even in custody cases involving the relocation of one or both parents, the ultimate objective in resolving the custody matter remains the best interests of the child." *Clapper v. Harvey*, 716 A.2d 1271, 1273 (Pa.Super.1998). "[T]he three factors we set forth in *Gruber* for the trial court to utilize in relocation disputes must ... be factored into the ultimate consideration of the court, which is to determine the best interests of the child." *Baldwin*, 710 A.2d at 614 (quotation omitted). *See Lee v. Fontine*, 406 Pa.Super. 487, 594 A.2d 724, 726 (1991) ("While we acknowledge the refinements posited in *Gruber* in relocation cases, they do not create a new standard and we hasten to stress the polestar of our analysis in this case, just as it was in *Gruber* ...remains the best interests of the child...."). "The determination of a child's best interests involves the consideration of all relevant factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Clapper*, 716 A.2d at 1273 (citation omitted). As such, it follows that the factors outlined in *Gruber*, if deemed relevant and likely to affect the children's physical, intellectual, moral and spiritual well-being, should also

be applied and considered in an equal shared custody case where one party seeks to relocate the children out of state. *See Clapper, supra* (holding that where the non-primary custodial parent sought permission to relocate, the *Gruber* analysis was appropriate since the factors affected the best interest of the children). Here, we conclude that the factors outlined in *Gruber* are relevant and likely to impact the children's well-being, and, therefore, the trial court was permitted to consider the *Gruber* factors in this case in determining whether the change of custody and relocation were ultimately in the children's best interest.

¶ 12 Having determined that the *Gruber* factors are to be considered in equal shared custody cases, such as the one at bar, we must address Father's concerns regarding the trial court's analysis of *Gruber*. As mentioned previously, the first *Gruber* factor requires the trial court to determine the potential advantages of the move, the likelihood the move would improve substantially the quality of life for Mother and the children, and whether the move is the result of a momentary whim on the part of Mother.

¶ 13 In analyzing the first factor, this Court has stated the following:

In terms of the best interests of the child the primary physical custody family must be viewed as the family central and most important to the child's best interest. In determining the best interests of the child we must, therefore, focus on the primary physical custody family. 'What is advantageous to the unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children.'

*Perrott v. Perrott*, 713 A.2d 666, 671 (Pa.Super.1998) (*quoting Gruber*, 583 A.2d at 438) (citation omitted).

¶ 14 However, in the case *sub judice*, we are reviewing a request for

change of custody and relocation in the context of an equal shared custody arrangement. As such, *Gruber's* mandate that the court is to focus on the primary physical custody family, and what is "advantageous to the primary unit is obviously in the best interests of the children," is not applicable in this case. Here, there exists two primary family units, and, as such, we conclude that "both must be scrutinized similarly in the examination of competing custodial environments to which [*Rowles v. Rowles*, 542 Pa. 443, 668 A.2d 126 (1995)], refers." *Beers v. Beers*, 710 A.2d 1206, 1209 (Pa.Super.1998) (Montemuro, J., plurality) (holding that where no order awarding primary custody to either parent was in place prior to Mother's request for relocation, the court was permitted to consider the *Gruber* factors, but was required to analyze both of the then current family units). Moreover, as was stated in *Gruber*, 583 A.2d at 439:

> [i]n considering the prospective advantages to the move, a court shall not limit itself solely to enhanced economic opportunities for the custodial parent, but must also assess other possible benefits of the location.... We emphasize ...

that courts are not free to ignore or discount non-economic factors which are likely to contribute to the well-being and general happiness of the custodial parent and children.[2]

Keeping these principles in mind, we now review whether the trial court properly analyzed the first *Gruber* factor.

■ ¶ 15 In analyzing the first factor, the trial court stated the following:

> In regard to the first standard, the court was satisfied that this move for the Mother would substantially improve her quality of life and for the children and [*sic*] because the reason of her moving to Mobile, Alabama was because of her remarriage and not because of any momentary whim on her part. The first standard was amply satisfied by the mother.[3]

Trial Court Opinion filed 11/26/97 at 5. We find that the trial court's analysis regarding the first *Gruber* factor is incomplete.

¶ 16 From the trial court's opinion, it is clear that the trial court did not adequately "scrutinize similarly the competing custodial environments" in determining whether the children's quality of life would

---

**2.** We note that this Court has held that where the record reveals that the primary custodial parent's economic status will be greatly improved by the proposed move, it is unnecessary for the court to find a separate and distinct non-economic benefit to the children in order to satisfy the first *Gruber* criterion. *See Perrott, supra*; *Kaneski v. Kaneski*, 413 Pa.Super. 173, 604 A.2d 1075 (1992). This conclusion is based on *Gruber's* indication that "[o]rdinarily, when the move will significantly improve the general quality of life for the custodial parent, indirect benefits flow to the children with whom they reside." *Gruber*, 583 A.2d at 439. However, we expressly distinguish the case *sub judice* from *Perrott*, *Kaneski*, and all other primary custody cases finding that a substantial economic benefit to the primary custodian satisfies the first *Gruber* factor without consideration of other non-economic benefits. Unlike *Perrott*, and *Kaneski*, in this case the record does not reveal that Mother is the primary financial support for the children. Rather, it appears that both parents contribute to the children's economic well being. As such, the fact that Mother may

experience a substantial financial benefit by moving does not necessarily mean that the children will indirectly experience a substantial benefit in their lives. Therefore, in an equal shared custody case such as this one, it is necessary for the court to analyze the non-economic benefits flowing from the proposed move in order to determine whether the children's lives will be substantially improved as a result of the move. *See Clapper, supra* (holding that where non-custodial parent, who was not primarily responsible for children's financial support, sought to relocate, the court was required to consider the non-economic advantages of the proposed move). In any event, as will be discussed *infra*, the trial court failed to determine adequately whether the move was a substantial economic benefit to Mother.

**3.** We note that the trial court properly assigned Mother the burden of proving that the move would enhance her quality of life, and derivatively, that of the children. *Gancas v. Schultz*, 453 Pa.Super. 324, 683 A.2d 1207, 1211 (1996) (citation omitted).

be improved substantially. For instance, the trial court made insufficient findings of fact regarding the competing economic environments. That is, while the trial court acknowledged that Mr. Grindstaff was laid off from Air Products and accepted a new job in Alabama, the trial court made no findings regarding Mr. Grindstaff's salary, the stability of his new employment, or the terms of his new employment, i.e., whether he would be travelling often, thereby leaving Mother and the children at home alone. We conclude that such findings are particularly necessary when, as here, the new husband testified that he has had numerous jobs during his adult life, and that he has lived in approximately seven different homes from 1983 to 1987. N.T. 8/28/97 at 113, 126.

¶ 17 Similarly, while the trial court acknowledged that Mother's working hours were decreased as a result of the move to Alabama, that she would be working out of her home, and that she would be spending more time at home with the children, the trial court made insufficient findings regarding Mother's salary, stability of her new position with Air Products, and other terms regarding her employment, i.e., whether she would be travelling often, thereby leaving the children at home with Mr. Grindstaff. Moreover, the trial court made no findings of fact regarding Father's employment, including his salary, stability of his employment, or the terms of his employment.

¶ 18 In addition, we conclude that the trial court failed to make sufficient findings concerning the non-economic aspects of the competing custodial environments. In its findings of fact, the trial court indicated that Mother has two relatives in the Lehigh Valley area, and that Father has no relatives in the Lehigh Valley area, although his parents traveled to the area on holidays and once a month to visit the children. However, the trial court failed to address whether Mother has any relatives in the Mobile, Alabama area. *See Gruber, supra.* Moreover, the trial court made no mention of the schools in Alabama versus those in Pennsylvania, did not discuss the parties' homes and communities, and did not discuss the availability of activities and playmates for the children. *See Beers, supra; Gancas v. Schultz,* 453 Pa.Super. 324, 683 A.2d 1207 (1996); *Gruber, supra.* Simply put, the trial court did not adequately consider the first *Gruber* factor.

¶ 19 With regard to the second *Gruber* factor, indicating that the trial court should compare the parties' motives in seeking or preventing the move, the trial court found that Mother wanted to move to Alabama so that she could live with her new husband. The trial court failed to make any findings of fact or discuss Father's motive in preventing the move.[4] *See Zalenko, supra; Gruber; supra.*

¶ 20 With regard to the third *Gruber* factor, the trial court stated that "the court is satisfied that [Mother] will be cooperative in assuring substitute visitation arrangements with Father, which will adequately foster the on-going relationship between the children and their father." Trial Court Opinion filed 11/26/97 at 5. To support this conclusion, the trial court made the following finding: "[M]other ... testified as to substitute visitations that the father could have visitation with the children on all holidays and liberal visitation during the summer vacation." Trial Court Opinion filed 11/26/97 at 2. While such substitute visitation may be appropriate where the primary custodian is seeking to relocate, *See Kaneski, supra,* we find that further analysis is required where the parents share equal physical custody of the children. For instance, the trial court

---

**4.** We note that in *Gruber,* 583 A.2d at 440, this Court stated that in primary custody relocation cases "each parent has the burden of establishing the integrity of his or her motives in either desiring to move or seeking to prevent it." We find that this rule of law is equally applicable in equal shared custody relocation cases.

failed to explain how the substitute visitation of holidays and summer vacation will "foster the on-going relationship between the children and Father," where Father shared custody of the children on a three day-four day, four day-three day basis. We find that additional analysis is particularly needed where, as here, the trial court's findings of fact do not support the conclusion that the children's quality of life will be substantially improved as a result of the relocation. *See Kaneski, supra.* As such, we conclude that the trial court did not adequately address the third *Gruber* factor.

¶ 21 "Once the trial court utilized the three factors set forth in *Gruber*, these considerations must then be factored into the ultimate consideration of the court, which is to determine what is in the best interest of the child[ren]." *Gancas*, 683 A.2d at 1213 (citation and quotation omitted). In its opinion, the trial court noted that both Mother and Father were "good" parents; however, the trial court failed to analyze properly whether the relocation was, ultimately, in the children's best interest. *Clapper*, supra. The trial court improperly limited its analysis to the *Gruber* factors, improperly focused on Mother as a primary custodial parent, and failed to even consider the possibility of the children living with Father. *See Clapper, supra* (holding that in determining what is in the children's best interest, the court must consider all possible environments and relevant factors). For instance, the trial court failed to make any findings regarding Mr. Grindstaff's fitness to parent the children, or any findings regarding Mr. Grindstaff's relationship with his children by a previous marriage.[5] Moreover, the trial court failed to consider Mother's and Father's religions, their relationships with the children, their mental and physical status, or other factors which legitimately affect the children's physical, intellectual, moral and spiritual well-being. *Gancas*,

*supra ; White v. White*, 437 Pa.Super. 446, 650 A.2d 110 (1994).

¶ 22 Since it is clear that the trial court did not properly analyze all of the *Gruber* factors, and that it failed to consider ultimately the best interest of the children, we find it necessary to vacate the trial court's order and remand this case. It is well settled that:

> [I]t is the trial court's duty in a child custody matter to file a comprehensive opinion containing its findings and conclusions regarding all pertinent facts. Effective appellate review of child custody cases requires a complete and comprehensive trial court opinion containing exhaustive analysis of the record and specific reasons for the court's ultimate decision.

*Clapper*, 716 A.2d at 1274 (citation omitted). Here, the trial court's opinion is not "complete and comprehensive," and, therefore, we find it necessary to remand for further analysis in accordance with our decision. *Id.* at 1275.

¶ 23 Order vacated; Case remanded; jurisdiction relinquished.

¶ 24 FORD ELLIOT, J., files a Concurring Opinion.

¶ 25 JOHNSON, J., joins in the Concurring Opinion by FORD ELLIOTT, J., and joins in the Majority by STEVENS, J.

FORD ELLIOTT, J., concurring:

¶ 1 I agree with the majority that a remand for a more complete best interests analysis is required in this case. However, I am concerned that we are extending the *Gruber* analysis to apply to a joint custody arrangement. My concern centers on the idea that a fair reading of *Gruber* would indicate that the *Gruber* factors can only be effectively applied to a custodial parent seeking to relocate. In such a scenario, a court has already determined that the best interests of the children with respect to

---

**5.** The record reveals that Mr. Grindstaff's children live with his former wife.

their physical, intellectual, moral, and spiritual well being are met by the custodial parent. The question of the children's best interests addressed by *Gruber* is whether relocation with the custodial parent is in the children's best interests. I recognize, as does the majority, that *Gruber* does not create a "new" or different best interests standard. The court's focus in determining best interests must always focus on the child's overall well being. However, the issue to which this standard applies is very different in a relocation case versus a custody matter. An application of *Gruber* does not determine the custody issue; it determines only the relocation issue.

¶ 2 Joint custody arrangements are favored by courts because the overall best interests of the children are met through the cooperation and continuity provided by both parents. However, once a joint custodial parent seeks to relocate some distance away, the joint custodial arrangement can no longer exist.[6] Therefore, as occurred in the instant case, the relocation petition raises the custodial issue—very often for the first time. The court below granted primary physical custody to Mother and allowed the relocation. The concern I have is that I believe the trial court erred in making the primary custody decision based on an application of the *Gruber* factors. By determining that Mother satisfied the *Gruber* criteria, and therefore awarding her primary custody on this basis, the trial court precluded Father from consideration as primary custodian.

¶ 3 The *sine qua non* of *Gruber* is the idea that, all things being equal, the status quo of the children with regard to the primary parent is more important than the status quo of the children with respect to where the children live geographically.[7]

The whole import and application of the *Gruber* factors is that the overall best interests of the children are already being served by the custodial parent. This is the only context in which the *Gruber* factors make any sense. The *Gruber* factors look to the reasons and motives of the custodial parent in seeking to relocate. There is a presumption that if the custodial parent can show that his or her life will improve substantially, there is a concomitant benefit to the children. As set out in *Gruber*:

> In light of the foregoing, we conclude the mother more than met her burden of establishing that the proposed move would significantly and directly improve the quality of life for herself and therefore her children. We stress that we consider the children's well-being and best interests inextricably joined to the health and happiness of the custodial parent. We think it is indisputable, under the circumstances of this case, that appellant's ability to be an effective parent to her children is seriously undermined by the difficulty and unhappiness of her life in Pennsylvania. Conversely, there is no question that the move to Illinois is likely substantially to promote the well-being of the mother and, consequently make her a more effective, superior parent. We think it is fundamental that the best interests of the children cannot, in this case, be severed from the interests of the mother with whom they live and upon whose mental well-being they primarily depend.

*Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434, 440–441 (1990) (footnotes omitted).

¶ 4 What is missing in the instant case is a preliminary determination by the trial court that it is in the best interests of the children that primary physical custody

---

**6.** Even in non-relocation cases, joint custody arrangements may cease because of other concerns regarding the child. *See Beers v. Beers*, 342 Pa.Super. 465, 493 A.2d 116 (1985) (court is required to determine primary custody where joint custody arrangement is no longer feasible because of child reaching school age).

**7.** *See generally A.H. v. D.H.*, 146 P.L.J. 234 (1997), *affirmed sub nom. Hoesch v. Hoesch*, 731 A.2d 201 (Pa.Super.1998).

should be with Mother. Rather, the court decides the custody issue by analyzing the *Gruber* factors. For a grant of primary custody, the court must assess which parent will best serve the physical, intellectual, spiritual, and moral well being of the children. When making this preliminary determination, the relocation issue should not be a relevant fact. This is so because of the tremendous burden on, and obstacle to, the relocating parent to show that a disruption in the status quo will not be detrimental to the children. Although not directly on point, this court has decided as much in *Gancas v. Schultz*, 453 Pa.Super. 324, 683 A.2d 1207 (1996), where we reversed the trial court on its application of the *Gruber* factors when it concluded that primary custody should be with father because mother was upsetting the child's status quo by her relocation.

¶ 5 A fundamental reality for the children of divorce is change. Therefore they can never be guaranteed a *status quo*.

'[I]t is obvious that for the child the fact of the divorce becomes the predicate of his subsequent relationship with both parents and that relationship can never be the same as it would have been had the marriage remained intact. Adjustments and accommodations must be made as a result of the divorce, the whole point of which was to permit each parent to go his or her own way. Within reason, both parties must be permitted to do so, and the child's best interests must be served within that context.'

*Gruber*, 583 A.2d at 437–438, quoting *Helentjaris v. Sudano*, 194 N.J.Super. 220, 230, 476 A.2d 828, 833 (1984), *cert. denied*, 99 N.J. 200, 491 A.2d 699 (1984), *disapproved on other grounds, Holder v. Polanski*, 111 N.J. 344, 544 A.2d 852 (1988).

¶ 6 I recognize that Mother was granted primary custody and the right to relocate. However, the trial court arrived at this conclusion by examining the benefits to Mother occasioned by the move. Nowhere can I find an evaluation of the physical, intellectual, moral, and spiritual well being of the children being served by primary custody with Mother versus Father. Although the majority's remand would require the trial court to make new findings with regard to the best interests of the children, I would go further and require the trial court to hold a full hearing directed to whether primary custody should be with Father or Mother.

¶ 7 As in any custody determination, the relationship of the children to each parent should be explored. The court should order any additional evaluations or studies it deems necessary. Evidence as to the type of home the children have or may have in the Lehigh Valley and in Alabama, the schools, the community, and family ties as set forth in the majority's opinion may all be relevant considerations. However, the *Gruber* factors which address Mother's motives and reasons for relocating and Father's issues regarding limited visitation caused by the relocation would not be proper subjects for this initial custody determination. If the court determines that primary physical custody should be granted to Mother, then the *Gruber* factors should be applied to assess the effect of the relocation on Mother, the children, and Father. However, if, following a full custody hearing, primary physical custody is awarded to Father, then no *Gruber* analysis would be required.

¶ 8 In conclusion, I fully recognize and appreciate that asking the trial court to divorce the relocation issue from the preliminary custodial question may be difficult in application for very practical reasons. This is especially true when the choice is otherwise between two loving and caring parents. However, I also recognize that judges make such "Solomon-like" decisions every day and sometimes with nothing more than their instincts to go on. Although formulistic approaches such as *Gruber* at least give a court a framework to use when rendering difficult decisions, tests such as *Gruber* only work within the context to which they apply. For *Gruber*, I believe that context requires an initial

determination as to which parent is to be the primary physical custodian of the child, before the court can delve into the issue of the effect of *that* parent's relocation on the child.

¶ 9 JOHNSON, J., joins Concurring Opinion by FORD ELLIOTT, J.