**Matthew L. KIRKENDALL, Appellee,**

v.

**Shayne E. KIRKENDALL, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 10, 2003.

Filed March 8, 2004.

Victor A. Neubaum, York, for appellant.

Kathleen J. Prendergast, York, for appellee.

Before: KLEIN, BENDER, and OLSZEWSKI, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 We must determine whether the trial court was correct to award primary physical custody of Aidan Kirkendall to his father. We affirm.

*Facts*

¶ 2 Mother and father were married in May of 1996. Out of this marriage a child was born. This child, named Aidan, is now six years old. Aidan has lived his entire life in or around Dallastown, Pennsylvania.

¶ 3 After Aidan was born and for about three-and-a-half years afterwards, mother worked part time as a therapist in order to spend more time with and care for Aidan. Father at that time was working long hours as a chef.

¶ 4 Even though mother was working as a therapist, her lifelong desire was to be a part of the Federal Bureau of Investigation (FBI). Therefore, when Aidan was about three-and-a-half years old she began to work full time and in 2001 applied to the FBI. Her application was processed quickly, and in July 2002 her application was accepted. Shortly afterwards, mother left for the FBI Academy in Quantico, Virginia. Father and Aidan stayed in the family's Dallastown home during this time with mother returning home every weekend to visit.

¶ 5 Five weeks into mother's training, however, it was learned that she was going to be assigned to the Sacramento, California field office. In preparation for the move, father sold their Dallastown house, moved their personal belongings to Sacramento, and began to scout out areas in Sacramento to live.

¶ 6 Yet, late in mother's training the two parents decided to separate. In response to the separation, father decided to stay in the York County, Pennsylvania area. Mother then graduated from the academy and sought a temporary assignment to the FBI's Harrisburg office. The request was granted.

¶ 7 Pursuant to an Interim Custody Order, mother and father shared physical custody over Aidan for about two months until, on January 6, 2003, mother was sent to Sacramento. Since that time, mother has returned to Pennsylvania about once every two weeks to visit Aidan.

¶ 8 Since physical custody could obviously not be jointly shared in the current case, a full custody hearing was required to determine which parent would be granted primary physical custody over Aidan. At the conclusion of the testimony, the trial court granted father's petition and the next day entered an order awarding primary physical custody of Aidan to father with partial physical custody in mother. Mother now appeals that determination. She argues that the trial court erred by not properly considering the best interests of Aidan.

*Scope and Standard of Review*

¶ 9 Because we are reviewing a child custody order our scope of review is "very broad." *Charles v. Stehlik*, 560 Pa. 334, 339, 744 A.2d 1255, 1257 (2000). While "we are bound by the trial court's factual findings," we are not bound by "the deductions made or inferences drawn" by the trial judge. *McAlister v. McAlister*, 747 A.2d 390, 391 (Pa.Super.2000). Yet, "an appellate court may not reverse a trial court's custody order absent a showing that the trial court abused its discretion." *Charles*, 560 Pa. at 340, 744 A.2d at 1257.

*Discussion*

¶ 10 Since the parents here are living far apart from one another, we must determine which parent should receive primary physical custody of young Aidan. The "best interests of the child" is our bedrock in this determination. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 295, 426 A.2d 555, 557 (1981). We must thus look at all of the facts of the case and consider "all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Dranko v.*

*Dranko*, 824 A.2d 1215, 1219 (Pa.Super.2003). Only then can it be determined which household and which living situation would best serve all interests of the child.

¶ 11 Mother first argues that the trial court failed to give appropriate weight to: (1) the fact that mother was Aidan's "primary caretaker during [his] formative years," and (2) Aidan's "preference to live with his mother." Appellant's brief at 4.

¶ 12 Mother's first argument is not an attempt to bring back the "tender years" doctrine. Rather, she is asserting the potentially valid argument that Aidan's interests would best be served by living with her since she was Aidan's primary caretaker during his first years of life. In this case, however, the argument falls short. As we have stated:

> where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker. Not to do so ignores the benefits likely to flow to the child from maintaining day to day contact with the parent on whom the child has depended for satisfying his basic physical and psychological needs.

*Commonwealth ex rel. Jordan v. Jordan*, 302 Pa.Super. 421, 448 A.2d 1113, 1115 (1982).

¶ 13 While the facts of this case do show that mother was Aidan's primary caretaker while he was young, the trial court is correct in noting that father has been Aidan's primary caretaker most recently. Because of this change in caretaking, it cannot be said that mother is now the main parent who satisfies Aidan's "basic physical and psychological needs." The facts of this case simply do not support mother's contention that vesting primary physical custody in father would wrench Aidan from the parent he primarily depends upon and destabilize Aidan's physical and psychological self. Thus, we agree with the trial court that, in the current case, this factor is insignificant when determining Aidan's best interests.

¶ 14 We also disagree with mother when she asserts that Aidan's stated "preference" to live with her should be given controlling weight. When the custody hearing took place, Aidan was five years old. In this hearing, Aidan did state that he wished to live with his mother in California. However, when asked why he preferred to live with his mother over his father he declared: "Because . . . mommy will be alone . . . [and] she wouldn't have anybody to play with." Aidan believed that his father would be "a little bit upset" if he left, but "Uncle Sean lives a little bit near him." When asked who "Uncle Sean" is, Aidan described him as "a good friend of my dad's."

¶ 15 Aidan's stated preference thus seems to have centered upon which parent would be lonelier without him: his father would have Uncle Sean to play with in Pennsylvania; his mother would be all alone in California.

¶ 16 The trial court did consider Aidan's preference in this case. Yet, the court declared, "given the reasons for that preference, the Court is unable to give the child's preference priority." We agree.

¶ 17 The child's "preference must be based on good reasons, and the child's maturity and intelligence must be considered." *McMillen v. McMillen*, 529 Pa. 198, 203, 602 A.2d 845, 847 (1992). Here, the trial judge found that while Aidan is very intelligent, the reasons Aidan gave for preferring his mother were not sufficiently mature to warrant deference to his decision. Not only is this determination supported by the facts, but it was a determination primarily reserved to the trial

judge. As our high Court has stated: "[t]he weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears." *Id.*

¶ 18 Finally, mother argues the trial court did not properly act in the best interests of Aidan when it granted father primary physical custody and that it placed her in a disadvantage because she is the parent who is relocating.

¶ 19 The current case does deal with the relocation of a parent. Because of this, it would seem that we should apply the factors set out in *Gruber v. Gruber* to determine if the relocation of Mother would comport with the best interests of Aidan. 400 Pa.Super. 174, 583 A.2d 434 (1990). As the trial court stated, however, in this case there was "no order awarding primary custody to either parent in place prior to Mother's request to relocate." Thus, prior to mother's request to relocate, no "best interests" analysis was done with respect to Aidan. Can we then just apply *Gruber* to determine where Aidan's best interests lie? The Honorable Kate Ford Elliot says no.

¶ 20 In *Thomas v. Thomas,* Judge Ford Elliot wrote a concurrence which showed that the *Gruber* factors are specifically tailored only to the relocation issue. *Thomas v. Thomas,* 739 A.2d 206, 213–16 (Pa.Super.1999) (Ford Elliot, J., concurring). Her conclusion seems to be born out by the plain words and reasoning of *Gruber.*

¶ 21 *Gruber* was concerned with "the standard to be applied by a trial court in determining under what circumstances a parent who has primary physical custody may relocate outside the jurisdiction of the court." *Gruber,* 583 A.2d at 435. After reiterating the fact that "achieving 'the best interests of the child' remains the

ultimate objective in resolving all child custody and related matters," the *Gruber* Court went on to find that trial courts were making relocation rulings in an unpredictable fashion. *Id.* at 181, 583 A.2d 434.

¶ 22 To provide some guidance to trial courts when they were faced with relocation cases, our Court set forth a number of factors trial courts were to consider, making for a more "uniform, evenhanded, and predictable dispute resolution." *Id.* The factors the Court enunciated thus fall under the general heading of "best interests of the child" yet they are specifically tailored towards the "critical concerns at stake" in *relocation* cases. *Id.* These concerns included: the reasons why the parent wishes to relocate; advantages to the move for both the relocating parent and the child; integrity of both parents opposing positions on the move; and finally the ability of the non-custodial parent to have substitute visitation with the child. *Id.* at 185, 583 A.2d 434.

¶ 23 Thus, it seems to appear that if a trial court merely applies the specified *Gruber* factors to a case in which it has not yet awarded primary physical custody to one of the parents, that court has abused its discretion. This is because the *Gruber* factors take into account only those best interest concerns related to relocation: a small corner of the best interest cosmos. As was already stated, a court must cover the entire continuum of "factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being" before it can determine where the best interests of the child really lie. *Dranko,* 824 A.2d at 1219.

¶ 24 In cases such as this where "there was no order awarding primary custody to either parent in place prior to Mother's request to relocate, the trial court [is] compelled to scrutinize both cus-

todial environments without favoring one over the other." *Marshall v. Marshall*, 814 A.2d 1226, 1230 (Pa.Super.2002). As Judge Ford Elliot pointed out in *Thomas*, if the relocation issue were to be factored into the preliminary best interests analysis, it would place a "tremendous burden on, and obstacle to, the relocating parent to show that a disruption in the status quo will not be detrimental to the children." *Thomas*, 739 A.2d at 215. Her solution to this problem would require the best interests analysis be done prior to factoring in the relocation issue: that is the only way we can be sure that both households will be treated equally in the best interests analysis. *Id.*

¶ 25 The *Thomas* majority opinion, however, was drawn up by our Court *en banc* and in it the majority stated: "in relocation cases where the parties have equal shared physical custody, the *Gruber* factors are applicable and should be considered as part of an overall 'best interest of the child' analysis." *Id.* at 209. We are thus bound by this holding, irrespective of the wisdom contained in Judge Ford Elliot's concurring opinion.

¶ 26 Moving onto the analysis required by the *Thomas* majority, the trial court first determined that both parents in this case were extremely "fit" to care for the child: both parents are responsible and loving to Aidan; both parents are able and willing to cooperate with one another; both parents can provide a good home to their child and both parents take an active role in Aidan's life. Apart from the changes relocation would bring, the trial court found that Aidan's best interests would be served in either household. After this, the court took into consideration the changes relocation would bring, how they affected Aidan's best interests and then the *Gruber* factors.

¶ 27 It determined that since father is working construction, father would be able to spend a lot of time with Aidan during the colder months of the year but very little time with the child during the summer. If father were to have custody of Aidan over the summertime, the time spent with his child would be erratic and short. This was a factor mitigating in favor of keeping Aidan with his father during the school year. Further, the court found that Aidan is very close to his extended family. All of these individuals (including mother's family) live in and around the York County, Pennsylvania area while no family members but mother live in California. It held that Aidan's close connection with his extended family improved his "physical, intellectual, moral and spiritual well-being," thus pushing the best interests analysis in favor of father.

¶ 28 That these considerations are linked to "relocation" is a true statement: these factors would probably not even be relevant if mother and father were living in the same town. However, the above factors are also extremely important in analyzing how Aidan's best interests will be served. All other things being equal, these factors "could not but tip the evidentiary scale in favor of his father." *McMillen*, 529 Pa. at 204, 602 A.2d at 848.

¶ 29 Moreover, even had we used Judge Ford Elliot's proposed analysis, the determination that Aidan's best interests would be served by staying close to his extended family would still be relevant. This is because our Supreme Court *requires* a court to "take into account all factors that bear upon the child's welfare and that can aid the court's necessarily imprecise prediction about that child's future well-being." *In re Davis*, 502 Pa. 110, 122, 465 A.2d 614, 620 (1983). Aidan's contact with a closely knit extended family is one such factor.

¶ 30 As to the *Gruber* factors, the trial court found that while mother's relocation was made in good faith and would substantially improve mother's economic and non-economic welfare, these factors did not trump the substantial non-economic benefits Aidan would receive living in Pennsylvania. Further, the judge held that father's "opposition" to the move was not motivated by bad faith.

¶ 31 In conclusion, we agree with the trial court that in this difficult case, Aidan's interests are best served by father having primary physical custody. No abuse of discretion occurred by the trial court and we affirm the custody order.

¶ 32 Order affirmed.