J-A01034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NICHOLAS STEFANO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NATALIA CRUZ | : | No. 961 MDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2020-40262

BEFORE: LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED MARCH 31, 2022**

Appellant, Nicholas Stefano ("Father"), appeals from the order entered in the Lackawanna County Court of Common Pleas, granting the request of Appellee, Natalia Cruz ("Mother"), to relocate with the parties' minor child, V.S. ("Child"). We affirm.

The trial court set forth the procedural history of this case as follows:

> [T]his action commenced by Father filing a Complaint for Custody on February 24, 2020. Father then filed Petitions for Special Relief on February 24, 2020 and March 6, 2020 wherein he alleged that Mother relocated with the minor child outside of Lackawanna County, Pennsylvania. In Father's Petitions, he requested sole legal and physical custody because of allegations that the minor child was at risk of serious bodily injury in Mother's custody. The [trial court] issued Orders dated February 24, 2020, and March 6, 2020, prohibiting Mother from relocating with the minor child outside of Lackawanna County but did not issue an award of custody at that time.… On June 23, 2020, the parties appeared before [the court] via video conference for a hearing on Father's Petitions for Special Relief. After a

> hearing, [the court] issued an Order dated June 23, 2020, directing that Mother shall not be permitted to relocate outside of Lackawanna County until a Petition for Relocation is filed and a hearing is held on such Petition. Further, the parties were ordered to submit a stipulation regarding shared custody of the minor child to [the court].
>
> On March 23, 2021, Mother filed a Petition for Relocation. On April 22, 2021, Father filed a Petition to Strike [Mother's] Petition for Relocation for failure to include necessary information in accordance with the relocation statute. The parties appeared via video conference before this [c]ourt on April 28, 2021 for a hearing on Father's Petition to Strike [Mother's] Petition for Relocation. At that time, the parties reached an agreement that Mother shall provide the necessary information to Father in compliance with the relocation statute.

(Trial Court Opinion, filed 8/17/21, at 1-2).

The court held an evidentiary hearing on Mother's relocation petition on June 17, 2021. Mother testified that she relocated with her daughter, N.J. ("Sibling"), from Ohio to Pennsylvania in 2018 to have a relationship with Father. After Child was born, Mother, Father, Sibling and Child moved to Florida to live with Mother's mother ("Maternal Grandmother"). Mother testified that Maternal Grandmother found Father to be too controlling and asked the parties to move out of her home. They moved back to Pennsylvania and moved in with Father's mother ("Paternal Grandmother"). Mother testified that she did not get along with Paternal Grandmother because Paternal Grandmother would belittle her and undermine her role as Child's mother. After Mother and Father split up in early 2020, Mother moved out of Paternal Grandmother's house.

The parties came to an agreement that Child would stay with Father for four days of the week and with Mother for three days. The parties largely followed this schedule until April of 2020 when Father refused to give Child to Mother for over a month. A week before Mother's Day, Mother went to Paternal Grandmother's house to see Child and Father called the police to have Mother removed. Father refused to hand over Child until Mother gave him information about Sibling that Mother was no longer comfortable sharing with Father after they broke up. Mother testified that Father never mentioned concerns about Covid-19 as the reason for withholding Child until the police questioned him about the matter. Father gave Child to Mother the day before Mother's Day after Mother relented and told Father the information he wanted about Sibling's whereabouts.

Mother testified that Father was verbally abusive to her during their relationship. She stated that Father would often berate and belittle her in front of her children and others. While they were living at Paternal Grandmother's house, both Father and Paternal Grandmother would verbally abuse Mother in front of her children, creating a toxic environment. Mother also testified that Father was extremely controlling of her and her children. Father did not like Sibling's father and would get upset when Mother contacted him to co-parent Sibling. While the parties were in Florida, Sibling's father wanted to be more involved in Sibling's life, but Father was very opposed to this, claiming that he was Sibling's father. Mother had to reach out to Sibling's

father privately and work out a custody plan without Father's knowledge. Mother testified that she currently has a great relationship with Sibling's father and they co-parent very well.

Mother further testified that she has no support system in Pennsylvania other than Father's family. If permitted to relocate, Mother would move to Fremont, Ohio where she has lots of family and friends. She would temporarily move into her aunt's house until she secures housing for herself. Mother currently works at Amazon and is eligible to transfer to the Amazon facility in Rockford, Ohio. Mother also hopes to attend cosmetology school at some point in the future. Mother located a preschool that is close to her aunt's house which has availability for Child. Mother further testified that moving to Ohio would encourage a strong bond between Child and Sibling. Sibling currently resides with her father and attends school in Ohio, and Father does not permit Child to go with Mother when she visits Sibling in Ohio. Mother also wants Child to develop a better relationship with Mother's family in Ohio. Mother further stated that she wants Child to have a good relationship with Father and is willing to work out a custody arrangement to maintain a strong parental bond between Father and Child.

Madison Hammond, Sibling's father's fiancé, testified that she has been friends with Mother since 2017. Ms. Hammond stated that Mother and Sibling's father are very open and accommodating in coparenting Sibling. She further testified that Father seemed controlling when Mother was in a

relationship with him. Specifically, Father would always be present when Sibling video chatted with her father and would dictate how the call would go. Further, Father became very upset when Sibling started identifying her father as her father. Father continued to claim that he was Sibling's father. Sibling is currently in therapy because she is afraid of Father.

Father testified that he never kept Child from Mother. Father had concerns about Covid-19 and wanted to know whether Mother traveled out of state to pick up Sibling. Father stated that he loved Sibling like his own child and wants Child and Sibling to be close. Father testified that he only objected to Mother taking Child to Ohio to visit because he was afraid that Mother would not bring Child back. Father stated that he has concerns about Mother's parenting. Specifically, Father noted that Mother was inattentive to Child when she watches him after she works night shifts.

Father testified that Child has an established routine when he stays with Father. When Father is at work, Paternal Grandmother watches Child and maintains the same routine. Child plays with the children next door almost every day. Father takes Child to all his doctor's appointments. Father does not currently have health insurance through work but is in the process of acquiring it. Father reported that he was unaware that Child was insured under Mother's insurance.

Paternal Grandmother testified that she has a great relationship with Child. She is available to provide childcare to Child when needed. Paternal

Grandmother noted instances where Mother fell asleep while Child was in her care and expressed concerns over Mother's attentiveness.

Corey Venosh testified that she has been friends with Father and Mother for years. Ms. Venosh testified that Father is a great father to Child. She further stated that she has never seen Father raise his voice at Mother or Child.

After considering all the evidence, the trial court granted Mother's petition for relocation on June 17, 2021. Father's counsel represented to the court that Father and Mother would work out an agreement as to periods of custody pending appeal. Accordingly, the court granted Father shared legal custody and partial physical custody without specifying the exact schedule for Father's periods of custody. On Monday, July 19, 2021, Father filed a timely notice of appeal and contemporaneous statement of errors complained of on appeal.

Father raises the following issues for our review:

> Did the trial court err and find contrary to well settled law and the evidence admitted at trial, by finding that [Mother] met the burden required according to the **Gruber**[1] standards and 23 Pa.C.S.A. § 5337 in connection with her Petition for Relocation?
>
> Did the trial court err by failing to place the best interests of [Child] over the interests of [Mother]?
>
> Did the trial court err as a matter of fact and law in finding Mother presented sufficient evidence that the relocation

_____

[1] **Gruber v. Gruber**, 583 A.3d 434 (Pa.Super. 1990).

- 6 -

would significantly improve her and [Child]'s quality of life?

Did the trial court err as a matter of fact and law by failing to consider [Child]'s young age, developmental stage, his individual needs and the likely impact the relocation will have on his physical, educational and emotional development?

Did the trial court err as a matter of fact and law when it failed to consider the Pennsylvania Superior Court's Opinion in **Thomas v. Thomas**, 739 A.2d 206 (Pa.Super. 1999) [(*en banc*)] and the parties' shared custody prior to Mother's relocation?

Did the trial court err as a matter of fact and law when it determined there were realistic substitute visitation arrangements available which will adequately foster an ongoing relationship between [Child] and [Father]?

Did the trial court err as a matter of fact and law by failing to require [Mother] to immediately notify [Father] of any medical issues or developments in regard to [Child]?

Did the trial court err as a matter of fact and law by providing only discretionary language in the relocation order regarding [Father]'s visitation which does not provide [Father] with any specific dates for visitation throughout the entire school year or provide for any holiday visitation?

Did the trial court err as a matter of fact and law when it failed to retain jurisdiction, based on the parties' agreement, its knowledge of Father's intent to appeal, and [Child]'s home state of Pennsylvania?

Did the trial court err as a matter of fact and law when it failed to grant Father's request to stay Mother's relocation pending appeal as the court remained the appropriate forum to address the custody action as the home state of the minor child and Mother had not yet relocated at the time of the hearing?

(Father's Brief at 5-7).

In his first six issues combined, Father argues that the court did not

properly weigh all relevant evidence to determine whether relocation was in Child's best interest. Father asserts that the court did not properly consider the relationships that Child has with Father's family and neighbors particularly in comparison to Child's relationship with Mother's family in Ohio, who Child has only met once. Father avers that the court erred in finding that Mother's quality of life would be improved by the relocation where Mother would only transfer laterally in her job and would move from her own apartment in Pennsylvania to a room in her aunt's house in Ohio. Father contends that it was unreasonable for the court to conclude that Mother would encourage a relationship between Father and Child in light of Mother's history of thwarting a relationship between Sibling and her father when she lived in Florida.

Father further insists that the court placed too much importance on the improvement to Mother's quality of life when there was no evidence of record that Child's quality of life would be improved by relocating. Father maintains that the court erred by considering educational opportunities in Ohio when Child was only two at the time of the hearing. Furthermore, Father avers that the court did not adequately scrutinize the competing custodial environments in determining whether Child's quality of life would be improved by relocating. Father emphasizes that there is no realistic custody arrangement that would maintain the relationship between Father and Child because the seven-hour distance from Pennsylvania to Ohio would remove Father from Child's day-to-day life. As such, Father contends that relocation would negatively impact

Child's physical and emotional development by separating Child from Father, particularly because Father is the one who takes Child to his doctor's appointments. Father concludes that Mother failed to sustain her burden of demonstrating that relocation was in Child's best interests, and the trial court abused its discretion by permitting Mother to relocate. We disagree.

In reviewing a child custody order:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted).

"The trial court must consider all ten relocation factors and all sixteen custody factors when making a decision on relocation that also involves a custody decision." *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa.Super. 2013). With respect to a custody order, Section 5328(a) provides:

### § 5328. Factors to consider when awarding custody

**(a)    Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by

considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).  In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."  *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013).  A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d).  *Id.*

The Custody Act defines "relocation" as "[a] change in residence of the child which significantly impairs the ability of a nonrelocating party to exercise

custodial rights." 23 Pa.C.S.A. § 5322(a). Section 5337 sets forth the procedures and factors governing relocation in relevant part as follows:

**§ 5337. Relocation**

\* \* \*

**(h)** **Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the

general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). Moreover,

[T]he party proposing relocation…bears the burden of proving relocation will serve the children's best interests. *See* 23 Pa.C.S.A. § 5337(i). Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. 5337(i)(2).

*S.J.S., supra* at 551. In all of these proceedings:

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

Instantly, the court conducted an evidentiary hearing and carefully

- 13 -

considered all custody and relocation factors, including the motives of both parties in seeking and opposing relocation. (*See* Trial Court Opinion at 3-13). Regarding the relocation factors, the court found that Child has a good bond with Father, Mother and Sibling. However, the court determined that Mother was more likely to promote a relationship between Child and the other parent because Father has previously thwarted Mother's relationship with Child by preventing her from seeing him. The court also found that Father could continue to have a meaningful relationship with Child with regular periods of physical custody facilitated by custody exchanges at a halfway point between Ohio and Pennsylvania. Further, the court found that both Mother's and Child's quality of life would be improved by relocation. Mother planned and presented evidence of secure housing and employment in Ohio. Mother also has an extensive support system in Ohio and stated that she believes she will be mentally and financially healthier there. In addition, Sibling lives and attends school in Ohio. Relocation would allow both Mother and Child to spend more time with Sibling to strengthen that bond. The court also found it significant that Mother located an early education facility that has availability for Child in Ohio.

Regarding custody factors, the court found that both parties adequately performed parental duties while Child was in their custody. However, there was credible evidence that Father was controlling and verbally abusive towards Mother, Sibling and Mother's extended family. Further, Mother has

been trying to allow Sibling and Child to have a strong relationship, but Father has refused to allow Mother to take Child to visit Sibling in Ohio. Contrary to Father's assertions, the court properly considered all the factors articulated in Sections 5328(a) and 5337(h), including the impact of relocation on Child's development, the impact of relocation on Child's quality of life, and the best interests of Child.[2]  **See A.M.S., supra**.  The court's determinations are supported by the record, and we decline Father's invitation to reweigh the

_____

[2] Father cites and relies on **Gruber, supra**, in which this Court stated that in every relocation dispute, the trial court must consider: (1) the custodial parent's desire to exercise autonomy over basic decisions that will affect his or her life and that of the children; (2) a child's strong interest in maintaining and developing a meaningful relationship with the non-custodial parent; (3) the interest of the non-custodial parent in sharing in the love and rearing of his or her children; and (4) the state's interest in protecting the best interests of the children.  Thus, the **Gruber** Court stated that trial courts must consider (1) the potential advantages of the proposed move and the likelihood the move would substantially improve the quality of life for the custodial parent and children; (2) the integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and (3) the availability of realistic, substitute arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent. **See Gruber, supra**.  Nevertheless, Section 5337 altered the legal standards that a trial court must consider when ruling on a request to relocate.  Trial courts must now consider **all** relocation factors listed in Section 5337(h). **See E.D. v. M.P.**, 33 A.3d 73 (Pa.Super. 2011).  **See also C.R.F. v. S.E.F.**, 45 A.3d 441 (Pa.Super. 2012) (explaining that Section 5337 essentially codified relocation factors outlined in **Gruber** and its progeny).

Father also cites **Thomas, supra**, in which this Court held that the **Gruber** factors were to be considered in equal shared custody cases, and the trial court's failure to do so required vacating and remanding for a further analysis under the relevant factors.

Our review of the record confirms that the trial court considered the relevant custody and relocation factors under the current statutory framework.

evidence in his favor. ***See S.J.S., supra***. Accordingly, Father is not entitled to relief on his first six issues.

In his seventh issue on appeal, Father argues that the court erred by failing to specify in its order that Mother is required to notify Father of any medical issues or developments regarding Child.

The court's order states that Father and Mother have shared legal custody. Legal custody is defined as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S.A. § 5322(a). By granting Father shared legal custody, the court gave him the right to be informed about Child's medical information and to make medical decisions on Child's behalf. To the extent that Father argues that the court was required to explicitly specify Father's right to medical information in its order, Father failed to cite any relevant authority to support this assertion. As such, the argument is waived. ***See In re Estate of Whitley***, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating: "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority").

In his eighth issue on appeal, Father argues that the court erred by failing to specify dates for Father's periods of custody of Child. Father asserts that by failing to include specific dates for Father's custodial time with Child, the court essentially allowed Mother to dictate when and how much time

Father can have custody.

The plain language of the court's order refutes Father's assertion. The court's order states that "Father shall have partial physical custody of the minor child at time[s] **_mutually agreed upon by the parties_**." (Trial Court Order, filed 6/17/21) (emphasis added). The court did not allow Mother to solely dictate Father's custodial time but allowed the parties the freedom to determine custodial periods by agreement. Furthermore, the court permitted such discretion because Father's counsel specifically represented to the court that she would work out a custody agreement with Mother's counsel pending appeal. (**_See_** N.T. Relocation Hearing, 6/17/21, at 119). Accordingly, this issue on appeal is without merit.

In his final two issues combined, Father argues that the court erred by refusing to retain jurisdiction over this matter and stay Mother's relocation pending appeal. Nevertheless, Father failed to cite to any relevant authority to support his claim that the court was required to retain jurisdiction after granting a petition to relocate Child outside of its jurisdiction. Likewise, Father's brief does not provide any support for his assertion that the court was required to stay Mother's relocation pending appeal. As such, these issues are waived. **_See Whitley, supra_**. Accordingly, Father's issues on appeal merit no relief and we affirm the trial court's order granting Mother's petition for relocation.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/31/2022</u>